Timothy John **DZIEPAK**, Appellant,

v.

**STATE** of Indiana, Appellee.

No. 1183S420.

Supreme Court of Indiana.

Oct. 11, 1985.

A. Leon Sarkisian, Merrillville, for appellant.

Linley E. Pearson, Atty. Gen., Lisa M. Paunicka, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

This is a direct appeal from a jury conviction for burglary, a class B felony, Ind. Code § 35–43–2–1 (Burns 1985 Repl.). Defendant-appellant, Timothy John Dziepak, was sentenced to twelve years in prison.

Appellant raises five issues on appeal: (1) whether admission of appellant's mug shot photograph constituted prejudicial error; (2) whether a sufficient chain of custody had been established prior to the admission of appellant's latent fingerprint card; (3) whether appellant's motion for judgment on the evidence should have been granted; (4) whether the evidence was insufficient to establish appellant's intent to commit a felony; (5) whether the twelve-year sentence imposed constituted cruel and unusual punishment.

These are the facts which tend to support the determination of guilt. On January 28, 1983, Dale Manns left his apartment at 7:15 a.m. to go to work. His wife remained at home until she picked her husband up from work at 4:00 p.m. Rather than returning home, the Mannses spent the evening visiting with relatives. Since they were leaving home for an overnight visit, Mrs. Manns secured their home before she left to pick up her husband. The windows were locked and intact, and the front door was locked with a dead bolt when she left.

The Mannses returned to a ransacked apartment the following afternoon. Drawers were pulled out and articles strewn on their bedroom floor, along with the contents of purses and suitcases that had been stored in their closet. In the living room there was broken glass on the floor and blood on the curtains. A cheese jar in the pantry, which had contained approximately fifteen dollars in silver change, had been emptied. No one had permission from the Mannses to enter their apartment in their absence.

The evening of January 28, 1983, Patrolman Chapa received a radio dispatch regarding a burglary in progress at the Mannses' apartment. Upon arrival, Chapa

noticed visible signs of forced entry (*i.e.*, broken glass). He took a closer look by shining his flashlight into the apartment and observed a male intruder inside the apartment. The intruder, who was subsequently identified as appellant, left the apartment through another window. The police began a foot pursuit of appellant, maintaining eye contact of appellant until his apprehension. Shortly after appellant jumped over a fence, he was apprehended by the police. Chapa identified appellant in court as the man he apprehended and arrested.

The police searched appellant during the booking procedure to remove any personal articles or evidence. A property inventory record was made of items confiscated, which included $11.86 in change.

## I

■ Appellant argues the admission of his mug shot photograph (State's Exhibit 6), which was taken incidental to his arrest for the present offense, constituted prejudicial error. Appellant's contemporaneous objection was based upon irrelevancy grounds. He claims the photograph served no relevant purpose since identity had already been established. Appellant further maintains the jury was aware of the existence of this photograph, even though the court ruled the photograph not be shown to the jury, due to numerous references made by witnesses to this photograph. While both appellant and the State contend the photograph was not displayed to the jury, this photograph may have been among those exhibits delivered to the jury room. The record is ambiguous, however, there is some indication the photograph was delivered to the jury room after trial proceedings and prior to jury deliberation. We also note that any testimony which used the phrase "mug shot" was in reference to general booking procedures except when one officer testified that he recognized State's Exhibit 6 to be a mug photograph taken when a person is fingerprinted. Moreover, while appellant claims the identity issue had been previously established,

there is neither indication in the record nor appellant referral to any stipulation regarding identity. Officer Chapa's testimony, which included an in-court identification of appellant, preceded the testimony wherein appellant's photograph was admitted. However, a police officer's identification testimony does not restrain the State from the presentation of corroborating evidence.

When the State was establishing the foundation required to introduce into evidence appellant's inked fingerprint card, the State also admitted appellant's photograph displayed in Exhibit 6. The exhibit is a frontal photograph of appellant holding a placard which displayed appellant's identification number and date the picture was taken. Officer Piskoty, a fingerprint examiner, testified that photographing and fingerprinting an arrestee was included within the booking procedure. An identification number is placed on both the photograph and the inked fingerprint card. In addition, the arrestee's name is also placed on the inked fingerprint card. Piskoty testified that the inked fingerprint card, which he was examining in court, had appellant's name and the identification number 46959 on it. Piskoty also recognized Exhibit 6 as the booking or mug photograph which is taken when a person is fingerprinted. He testified that Exhibit 6 and the inked fingerprint card had the same identification number.

The testimony and exhibit were utilized by the State to establish that the person in the photograph was the same person whose fingerprints appeared on the inked fingerprint card.

Mug shot photographs are generally inadmissible based upon the potential prejudice to defendant resulting from the implication of a prior criminal record. *Hovis v. State* (1983), Ind., 455 N.E.2d 577. A mug shot may be admissible where the State establishes the photograph is not unduly prejudicial and has substantial independent probative value. *Lane v. State* (1983), Ind., 445 N.E.2d. 965.

While it is patent from the information displayed on the photograph that it was a

product of police procedures, the admission of this exhibit did not unduly prejudice appellant. The implication arising from this exhibit is that appellant had been arrested, however, there was other direct testimony of appellant's arrest. *Lowery v. State* (1982), Ind., 434 N.E.2d. 868. In addition, when appellant testified at trial he admitted he had prior convictions. Appellant thereby presented the jury with direct evidence of a prior criminal record which was neither revealed nor inferable from a photograph which indicated it was taken incidental to appellant's arrest for the present offense. *Smith v. State* (1983), Ind., 445 N.E.2d. 85. The exhibit also had substantial probative value independent from the evidence. The photograph was the necessary link to establish it was appellant's fingerprints displayed on the inked fingerprint card.

## II

■ Appellant argues a sufficient chain of custody had not been established prior to the admission of Exhibit 8, which displayed latent fingerprints. He maintains there were initials and a date on the envelope which contained these latent fingerprints, thereby indicating the evidence was handled by more persons that those who testified at trial.

On the evening of January 28, 1983, Officer Reilly obtained latent fingerprints from the cheese jar at the Mannses' apartment. The latent fingerprints were pressed onto a transparent, plastic, adhesive tape and permanently affixed to a lift card. These lift cards identified who lifted the prints, the location from which the prints were lifted, the case number, date, and time. Reilly identified the four latent lift cards in court based upon his mark on the cards. Reilly also testified the latent lift cards were in substantially the same condition as when he obtained them in January.

Officer Piskoty, a fingerprint examiner, compared State's Exhibit 7 (appellant's inked fingerprint card taken during booking procedures) and State's Exhibit 8 (the latent fingerprints collected from the Mannses' apartment). Piskoty concluded that three of the four latent fingerprints were appellant's fingerprints. He also testified the latent fingerprint cards were in substantially the same condition as when he made his examination. Testimony regarding the fingerprint collection at the crime scene, and the personal marks placed on the lift card, and the unchanged character of the card, amply established a sufficient chain of custody for their admission into evidence. *Dier v. State* (1982), Ind., 442 N.E.2d. 1043.

## III

■ Appellant argues the trial court's denial of his motion for judgment on the evidence was erroneous and should be reversed. Appellant predicates his claim on the State's failure to establish the element of intent to commit a felony.

At the close of the State's evidence appellant moved for, and the trial court denied, judgment on the evidence. After the trial court denied appellant's motion, appellant presented evidence. Any error in the ruling is not subject to review on appeal when defendant presents evidence subsequent to a denial for a judgment on the evidence. *Parker v. State* (1976), 265 Ind. 595, 358 N.E.2d. 110. There is no rational basis to reexamine the existence of a *prima facie* case after appellant presents further evidence.

## IV

■ Appellant argues the jury verdict was contrary to law and not sustained by sufficient evidence. Specifically, he contends there was insufficient evidence to prove the element of an intent to commit a felony. This Court will not weigh the evidence or judge the credibility of witnesses. Rather, we will consider only that evidence most favorable to the State and all reasonable inferences to be drawn therefrom which support the verdict. If there is substantial evidence of probative value which would permit a reasonable trier of fact to find the existence of each element of the offense beyond a reasonable doubt the

judgment must be affirmed. *Sizemore v. State* (1985), Ind., 479 N.E.2d. 1313.

The evidence most favorable to the State discloses that when the Mannses left for an overnight visit their house was securely locked. They returned the following day to a ransacked apartment and determined that approximately $15 in change was stolen from their cheese jar in their kitchen. Patrolman Chapa, after arriving at the Mannses' apartment in response to a radio dispatch, observed a male intruder inside their apartment. He also saw appellant exit the Mannses' apartment through one of their windows, pursued appellant on foot, and then arrested appellant. While appellant testified at trial regarding his alcohol and drug consumption on that day, Chapa did not detect any alcohol odor emanating from appellant or observe any behavior indicative of an intoxicated person at the time he arrested appellant. A similar issue was presented in *Beland v. State* (1985), Ind., 476 N.E.2d. 843, wherein this Court noted:

> " 'The law is well settled that voluntary intoxication is no defense in criminal proceedings unless it can be shown that the accused was so intoxicated as to be incapable of forming the specific intent necessary to commit the crime. The burden of proving this defense is on the defendant. The intoxication must be of such a degree as to deprive him of the power to deliberate or form the necessary design or guilty intent. Mere intoxication, in the absence of some mental incapacity resulting therefrom as will render a person incapable of thinking deliberately and meditating rationally cannot be regarded as sufficient. The mental incapacity must render a person incapable of appreciating the wrongfulness of his conduct or of conforming his conduct to the requirements of law in order to be sufficient to relieve one of the responsibility for his acts. So long as the accused is capable of conceiving a design, he will be presumed, in the absence of contrary proof, to have intended

the natural consequences of his own acts.' "

*Beland* at 846.

The degree of intoxication is a question of fact to be decided by the jury. *Coble v. State* (1985), Ind., 476 N.E.2d. 102. As noted above, it is appellant's burden to prove that his intoxication arose to the level required by law to relieve him of criminal responsibility. Appellant did not satisfy this burden. The record indicates that appellant was capable of performing activities which indicate he did have control over his actions: forcible entry of the Mannses' apartment, discriminating search of the Mannses' personal property, and the ability to jump over a fence while the police pursued him. Since appellant did not meet his burden, evidence appellant ransacked the Mannses' apartment was sufficient to support the inference appellant intended to commit a felony therein. *Meadows v. State* (1981), Ind., 428 N.E.2d. 1232.

## V.

Appellant claims the twelve-year sentence imposed constituted cruel and unusual punishment. He maintains that substantial evidence established his defense of intoxication and therefore the sentence imposed is disproportionate to the severity of the crime.

A punishment is excessive and unconstitutional it if (1) makes no measurable contribution to acceptable goals of punishment but rather constitutes only purposeless and needless imposition of pain and suffering, or (2) is grossly disproportionate to the severity of the crime. *Douglas v. State* (1985), Ind, 481 N.E.2d 107. Since this sentence reflects a concern for the acceptable goals of punishment and is not grossly disproportionate to the severity of the offense, it is not violative of the Eighth Amendment to the United States Constitution or Article 1, Section Sixteen of the Indiana Constitution.

Judgment affirmed.

GIVAN, C.J., and PRENTICE, PIVARNIK and SHEPARD, JJ., concur.