**Derek S. SMITH, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee.**

**No. 48A02–9010–CR–00611.**

Court of Appeals of Indiana,
Second District.

Oct. 29, 1991.
Transfer Denied Jan. 27, 1992.

William Byer, Jr., Byer & Byer, Anderson, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Gary Damon Secrest, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee.

SULLIVAN, Judge.

Appellant Derek S. Smith was convicted of Robbery as a Class B felony under I.C. 35–42–5–1 (Burns Code Ed.1985). Smith presents three issues upon appeal:

1) Whether the trial court properly admitted the confession of Smith, a juvenile, in accordance with the juvenile waiver of rights provisions of I.C. 31–6–7–3;

2) Whether the trial court properly admitted a line-up photograph depicting Smith in prison clothing; and

3) Whether the trial court improperly considered defendant's use of an unloaded, malfunctioning gun to be an aggravating circumstance in sentencing.

We affirm.

On the evening of July 6, 1989, appellant Smith and Djuan Lewis, both juveniles, overpowered Robert A. Garcia, closing shift manager at a Sizzler Restaurant in Anderson, as he left the restaurant. Smith and Lewis forced Garcia to open the doors to the restaurant and proceeded to take money from the safe after forcing Garcia to open it. The two beat Garcia throughout the robbery, using their fists, the butts of two guns they possessed, and a wine bottle. As a result of the attacks, Garcia received 45 stitches in the head, and suffered black eyes and headaches. Shortly after the incident, the two boys were apprehended in a taxicab headed towards Indianapolis.

## I.

Smith was placed under arrest and taken to the Anderson Police Station. Police Detective Sumner contacted Smith's mother, who came to the station. He advised her in private that her son was under arrest for

robbery. An unidentified police officer advised her that her son had not been identified as a participant in the robbery but was apprehended with a boy who had. Sumner took Mrs. Smith to see Smith and advised the two of their rights. The Smiths signed a waiver of their rights. Then, Sumner allowed the Smiths to confer in private for approximately twenty minutes. After the conference, Sumner again advised the Smiths of their rights. At this point, the Smiths orally waived their rights. Smith then confessed his involvement in the robbery, and both he and Mrs. Smith signed a confession which included a standard juvenile waiver. After the confession, the Smiths signed yet another waiver of their rights.

At trial, the prosecution attempted to enter the two signed waivers and the confession into evidence. Smith moved to suppress the evidence on grounds that it was obtained in violation of I.C. 31–6–7–3 (Burns Code Ed.1987). The trial court denied the motion. Smith now appeals that ruling, asserting that he was denied a meaningful consultation with his mother and that the confession was not a knowing and voluntary waiver of his rights.

Smith asserts that the police misled his mother by telling her that Smith had not been positively identified as a participant in the crime. In essence, Smith appears to argue 1) that the police told Mrs. Smith that her son had not been identified; 2) that she did not understand the ramifications of this fact, presumably thinking that her son was not in criminal jeopardy; and 3) that based upon this misrepresentation, she advised her son to tell the police everything they wanted to know. On this basis, Smith concludes that his parent-child consultation was tainted and that his confession was involuntary.

Smith was 16 years old when he committed the robbery and 17 at the time of trial. Thus, Smith is entitled to the procedural protections of I.C. 31–6–7–3. That statute provides that a juvenile's rights may be waived if the custodial parent knowingly and voluntarily waives the right after meaningful consultation with the child and the child knowingly and voluntarily joins in the waiver. I.C. 31–6–7–3(a)(2).

### A.

Several cases have dealt with the meaningful consultation requirement. In *Fowler v. State* (1985) Ind., 483 N.E.2d 739, the police allowed a juvenile and his mother to consult in a laboratory reception room, which was a separate section of the police post not accessible to the general public. A police officer stood on the opposite side of a sliding glass door. The juvenile argued that the consultation was inadequate because too many people were coming and going through the reception area to allow him to talk freely with his mother. The Supreme Court held that these conditions were sufficient to permit free discussion of the waiver which the juvenile subsequently signed. 483 N.E.2d at 743. In *Chandler v. State* (1981), 275 Ind. 624, 419 N.E.2d 142, 147, the Supreme Court held that a ten-minute consultation was sufficient to meet the requirement.[1]

In the present case, the Smiths were allowed to consult in private for approximately twenty minutes. This consultation was clearly adequate to meet the requirements of I.C. 31–6–7–3(a)(2)(C).

Smith appears to argue, however, that the consultation was inadequate because Mrs. Smith misapprehended the situation confronting her son. I.C. 31–6–7–3(d)(2) treats a parent's misunderstanding of the consequences of the child's statement as a factor affecting the voluntariness of the confession. We will do the same.

### B.

Smith asserts that his confession was involuntary because his mother misap-

---

**1.** The *Chandler* court referred to the meaningful consultation requirement introduced in *Lewis v. State* (1972) 259 Ind. 431, 288 N.E.2d 138, 142. I.C. 31–6–7–3 is a codification of the *Lewis* hold- ing. Kiefer, "Commentary" to § 31–6–7–3, at 303 (West Code Ed.1979). Thus, *Chandler* serves as a guide to construing I.C. 31–6–7–3.

prehended the danger to Smith due to the police's statement that Smith had not been identified. Upon appeal, we will review the trial court's determination of voluntariness with regard to the "totality of the circumstances" and will consider only the evidence most favorable to the State. *Yates v. State* (1978) 267 Ind. 604, 372 N.E.2d 461, 463. In determining whether a juvenile's waiver of rights is voluntary, the trial court is to consider the factors set forth in I.C. 31–6–7–3(d), including

"(1) The child's physical, mental, and emotional maturity;

(2) Whether the child or his parent . . . understood the consequences of his statement;

(3) Whether the child and his parent . . . had been informed of the delinquent act with which the child was charged or of which he was suspected;

\* \* \* \* \* \*

(5) Whether there was any coercion, force, or inducement; and

(6) Whether the child and his parent . . . had been advised of the child's right to remain silent and to the appointment of counsel."

In *Jackson v. State* (1978) 269 Ind. 256, 379 N.E.2d 975, a fifteen year old boy admitted to murder under the erroneous belief that he would be tried in juvenile court. Neither the boy nor his parents were advised that the offense of first degree murder was outside the jurisdiction of the juvenile court. The court recognized that an accused must be aware of the probable consequences of his act, but concluded that not every misapprehension concerning the extent and nature of the criminal liability to which a confession may expose the accused vitiates the voluntariness of the confession. 379 N.E.2d at 977. The court held that absent any implication that the boy would be tried in juvenile court, the

confession could not be considered involuntary. *Id.*

▪ Mrs. Smith was accurately informed of the circumstances leading to her son's arrest. The record is devoid of any evidence of coercion, force, or inducement on the part of the police. As a sixteen year-old high school student entering his senior year, Smith was relatively mature as a juvenile. The Smiths were advised of Smith's right to remain silent and his right to an attorney. Those rights were effectively waived. Thus, the only factor weighing against the voluntariness of the confession is Mrs. Smith's own failure to appreciate the fact that her son was in jeopardy of prosecution even though he had not been identified. The trial court was well within its discretion to find this factor standing alone insufficient to render the confession involuntary. *Jackson, supra.*

In any event, it strains credulity to say that the police's statement that Smith had not been identified and their request for cooperation lulled Mrs. Smith into thinking that Smith's full confession would not prejudice his case. The trial court did not abuse its discretion in finding the confession voluntary.[2]

## II.

The State introduced two photographs into evidence, which together depicted a line-up in which Smith appeared shortly after the crime. The victim was unable to identify Smith in the line-up. The photos depicted Smith, his accomplice, and four others in plain blue prison clothing. Smith asserts that the trial court abused its discretion in admitting the photos, likening the photos to mug shots and reasoning that the prejudicial impact of showing the photos to the jury greatly outweighed any probative value the photos may have had.

---

**2.** The State's brief addresses an additional issue: whether Mrs. Smith's failure to sign Smith's confession in a blank provided for the parent's signature on the standard juvenile confession and waiver of rights form renders the waivers ineffective? Mrs. Smith did sign each page of the confession in two places; however, a third blank for the parent's signature was left unsigned. Appellant's argument as to the waiver of rights issue is vague and it is not immediately apparent whether he intended to present such an issue or not. However, appellant makes no explicit reference to possible error in this regard. Thus, we deem no issue to be before us.

██ Admission of photographs into evidence is within the sound discretion of the trial court. *Morrison v. State* (1984) Ind., 462 N.E.2d 72, 75. Mug shots, while not favored as evidence, are not *per se* inadmissible and may be allowed if 1) they are not unduly prejudicial, and 2) they have substantial independent probative value. *Andrews v. State* (1989) Ind., 536 N.E.2d 507, 509. The potential prejudice in showing mug shots arises from the implication advanced that a defendant has a prior criminal record. *Dziepak v. State* (1985) Ind., 483 N.E.2d 449, 451. However, there is no prejudice when other evidence establishes that the photo was taken incident to defendant's arrest, thus negating the implication of a prior criminal record. *Dziepak, supra,* at 452.

Line-up photographs are not equivalent to mug shots because they do not have the numbers and symbols readily associated with law enforcement agencies. Nevertheless, the depiction of all six subjects in identical plain blue clothing could arguably lead the jury to identify the clothing as prison garb. Thus, we will assume *arguendo* that the mug shot analysis is apt.

██ Through the testimony of Detective Sumner, the jury was already aware that Smith had been arrested on the night of the line-up. Before introducing the photos into evidence, Police Detective Rodney Cummings testified that Garcia had been brought to the station to make a statement. He further testified that he prepared a line-up, at which he took the photos. They were then introduced into evidence. Thus, the jury knew that the photos were taken while Smith was under arrest and would not likely infer that Smith had a prior crim-inal record. Any potential for prejudice was negligible.

Absent prejudice, evidence is admissible if it logically tends to prove or disprove some issue or fact, and we will reverse the trial court's ruling only for abuse of discretion. *State v. Hall* (1982) Ind., 432 N.E.2d 679, 682. The photos may have been relevant to explain why Garcia had difficulties identifying Smith at that time, or they may have been helpful to diffuse the impact of Garcia's inability to identify him. In any event, nothing in the record suggests that the admission of this evidence was an abuse of discretion.

### III.

The trial court sentenced Smith to the presumptive term for a Class B felony of ten years plus five years for aggravating circumstances. In weighing the circumstances, the court cited as mitigating factors Smith's age (sixteen at the time of the commission of the crime and seventeen at the time of sentencing) and his lack of criminal history. As aggravating factors, the court noted the fact that a reduced sentence would depreciate the seriousness of the crime, the heinous nature of the crime, the fact that a firearm was used, and defendant's admitted use of marijuana prior to the crime. Smith contends that the trial court abused its discretion, first, by considering the use of a firearm as an aggravating factor, and second, by not placing enough weight on his age as a mitigating factor.[3]

██ A reviewing court will not revise a sentence authorized by statute except where such sentence is manifestly unreasonable in light of the nature of the offense

---

3. The jury found defendant not guilty of Class A robbery (robbery resulting in "serious bodily injury") but guilty of the lesser offense of Class B robbery (robbery with a deadly weapon or resulting in "bodily injury"). I.C. 35-42-5-1. During sentencing, the trial judge stated:
    "Also I think that the ... the heinous nature in which this, uh ... that the injuries which resulted in this case, even though Class B Felony is serious bodily injury I think the injuries in this case did rise to a much higher level of serious bodily injury...." Record at 1076.

The record thus suggests that the trial court found aggravating circumstances in the fact that the victim suffered "serious bodily injury," notwithstanding the fact that the jury necessarily concluded that the bodily injury was not serious. On the other hand, the Judgment of the Court does not list the injury as an aggravating factor. It is unclear whether the judge used the injury as an aggravating factor. In any event, the argument is waived since Smith has not addressed it in his brief.

and the character of the offender. Ind. Appellate Rule 17(B)(1). Thus, a reviewing court will overturn the trial court's judgment on sentencing only where there is an abuse of discretion. *Ellis v. State* (1991) Ind., 567 N.E.2d 1142, 1146.

The judgment here states:

"The Court ... having considered the pre-sentence report and the evidence presented this date, finds mitigating circumstances to be the defendant's lack of criminal history and his age. The Court finds aggravating circumstances to be the fact that a reduced sentence would depreciate the seriousness of the crime, the heinous nature of the crime, the fact [sic] a firearm was used and defendant's admitted use of marijuana prior to the crime. The [sic] finds that the aggravating circimstances [sic] outweigh the mitigating circumstance [sic] and therefore sentences the defendant for a periof [sic] of fifteen (15) years." Record at 131.[4]

■■■■ Appellant challenges the trial court's finding that his use of a gun was an aggravating circumstance. The use of a weapon, without more, cannot support an enhanced sentence for armed robbery because it is an element of the offense itself. *St. John v. State* (1988) Ind., 523 N.E.2d 1353, 1359. However, the manner in which a weapon is used and the circumstances surrounding the case may be sufficient to find that aggravating circumstances exist in the use of the weapon, even where that use is an element of the offense. *Adkins v. State* (1990) Ind., 561 N.E.2d 787, 789.

■■■■ The trial court did not elaborate upon the circumstances making Smith's use of a firearm an aggravating factor. However, the evidence was uncontested, both that Smith used a gun and that the victim suffered bodily injury. Class B robbery requires *either* the use of a deadly weapon *or* bodily injury. Since the jury verdict was supportable on grounds of the injury alone, the trial court could consider the use of a gun as an aggravating factor without treating it as an element of the crime. Thus, *St. John* and *Adkins* are inapposite.

The trial court was within its discretion to consider Smith's use of a firearm, standing alone, to be an aggravating factor in the commission of the robbery. *See Day v. State* (1990) Ind., 560 N.E.2d 641.

■■■■ Smith contends, however, that the gun was inoperable and unloaded, and therefore, should not have been considered to be an aggravating circumstance. The State need not prove that a firearm is capable of firing bullets. *McFarland v. State* (1979) 2d Dist., 179 Ind.App. 143, 384 N.E.2d 1104. In *Washington v. State*, Washington exposed his victims to "looking down the barrel of [his] gun." *Washington v. State* (1981) Ind., 422 N.E.2d 1218, 1221. It was not shown that the gun was operable. Our Supreme Court nevertheless held that the trial court could consider this use of the gun to be an aggravating factor, even though the use of a weapon automatically raised the count of one of the charges from a class D to a class B felony. *Id.*

■■■■ Smith used his gun, both to intimidate and to beat his victim. These circumstances are sufficient to warrant a finding of aggravation in the use of the firearm.

■■■■ Finally, Smith contends that the trial court did not take adequate consideration of his age as a mitigating factor. It is for the trial court to determine the weight to be given the aggravating or mitigating circumstances, and that determination is reviewable only for abuse of discretion. *Gilley v. State* (1989) Ind., 535 N.E.2d 130, 133. We decline the invitation to second-guess the trial court's balancing of the circumstances surrounding the robbery.

The judgment of the trial court is affirmed.

SHIELDS and HOFFMAN, JJ., concur.

---

**4.** While perhaps not a model explication of the court's rationale, which must accompany a finding of aggravating circumstances (*see Mills v. State* (1989) Ind., 536 N.E.2d 290, 291), the trial court did go beyond a mere recitation of the factors listed in I.C. 35–38–1–7.1 (Burns Code Ed.Supp.1991).