**John F. TINGLE, Appellant,**

**v.**

**STATE of Indiana, Appellee.**

**No. 83S00–9203–CR–00192.**

Supreme Court of Indiana.

April 5, 1994.

Larry Crawford Thomas, Clinton, for appellant.

Linley E. Pearson, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant of Robbery, a Class A felony; Aggravated Battery, a Class B felony; Confinement, a Class B felony; and Theft, a Class D felony. As the trial court determined the battery offense to be included within the robbery charge, appellant received no sentence for the aggravated battery. On the robbery, confinement, and theft counts, appellant received the maximum terms of fifty (50), twenty (20) and three (3) years, respectively, to be served consecutively for an executed sentence of seventy-three (73) years.

The facts are: On the evening of July 22, 1991, the 17-year-old appellant and his friend, Lester Osborne, left the house in Indianapolis where appellant stayed with his grandmother, Nellie Tingle. Discovering a parked car with the keys in it, the boys went for a joyride. Appellant, the driver, had an urge to tour the Rockville area where he had been incarcerated. While there, they disposed of the car's license plate and replaced it with one taken by Osborne from another car.

As they were traveling along State Road 63 just outside of Newport, a tire went flat and the boys stopped and put on the spare. About 20 minutes later, the insufficiently tightened lug nuts worked loose as the car was traveling approximately 75 miles per hour. Appellant managed to bring the car to a stop in the median, but they could not find the wheel that had come off. The boys walked to the nearby home of Albert Hawkins, who invited them in and let them use the telephone. When Osborne was unable to reach his intended party, the pair left.

Appellant and Osborne again searched for the missing wheel but had no luck. They returned to Hawkins' house and again were admitted to use the phone. As before, Osborne had no luck reaching his party; when Hawkins suggested they call the Sheriff for help, they asked him to look up the number. When Hawkins bent over the table to look, Osborne "clobbered" him with a taped-up socket handle. Hawkins attempted to resist, but Osborne continued to strike him about

the head as appellant held his arms from the rear. They struggled from the kitchen into the front room toward the bathroom, where Osborne picked up a television set and threw it at Hawkins, who was spared the impact due to being out of range of its power cord, which was still plugged into the wall socket.

The boys eventually subdued the 78-year-old Hawkins, tied him up in the bathroom with telephone cord and demanded to know the whereabouts of his truck keys and cash. They backed the victim's truck into the garage and proceeded to load it with his valuables, including small appliances, firearms, power tools, and miscellaneous items, all the while keeping Hawkins covered with his own 12-gauge shotgun. After a 45-minute loading spree, the boys left with the victim's truck, wallet, and several hundred dollars in cash. They drove to Cloverdale where Osborne hoped to fence the goods, but no takers were to be found. On their way out of town, Osborne, who was driving, lost control of the truck and was killed in the resulting crash. Appellant was lifelined to Methodist Hospital in Indianapolis, where the following day he was served with a warrant authorizing the taking of physical specimens and gave a statement to police.

■ Appellant contends the trial court erred in admitting evidence of other crimes. Included in his hospital statement were the facts set forth above alluding to appellant's prior incarceration at Rockville as well as his participation in stealing the car and license plate. When the statement and its transcription were offered in evidence by the State, appellant objected that the evidence of other crimes violated the general proscription as set forth in *Lawrence v. State* (1972), 259 Ind. 306, 286 N.E.2d 830. He maintained then, and urges now, that the remarks in question, being admitted not for impeachment purposes, nor to demonstrate intent, motive, purpose, identity, or common scheme or plan, thus were admitted to show a criminal propensity. *See Bedgood v. State* (1985), Ind., 477 N.E.2d 869.

The State claims the evidence was admissible as part of the *res gestae* [1] citing *Benefiel*

1. This case was tried before the Indiana Rules of Evidence became effective. For cases tried after

*v. State* (1991), Ind., 578 N.E.2d 338, *cert. denied,* ―― U.S. ――, 112 S.Ct. 2971, 119 L.Ed.2d 591. Appellant counters there was too great a time lapse between the car and plate thefts and the crimes perpetrated upon Mr. Hawkins for the two sets of events to be considered parts of the same transaction, or uninterrupted series of events, or *res gestae.* He cites *McCabe v. State* (1979), 272 Ind. 196, 396 N.E.2d 895 for the proposition that there must be no significant lapse of time between the charged and uncharged crimes, and *Warner v. State* (1991), Ind., 579 N.E.2d 1307 holding that introduction of a confession which embodies a mixture of charged and uncharged crimes was unduly prejudicial and thus reversible error.

■ In the case at bar, however, the time lapse of a few hours cannot compare to the two-week interval involved in *Warner.* Moreover, chronology is not the key to admissibility of *res gestae* evidence; rather, the relationship of the uncharged to the charged crimes is dispositive. In *Benefiel, supra,* for instance, we approved as *res gestae* the testimony of one torture/confinement victim who witnessed over a period of several weeks the ongoing torture/confinement and eventual slaying of the victim of the charged crimes. In the case at bar, the stolen car and plate and the trip to Rockville were instrumental in getting the boys to the scene of the charged crimes and clearly were part of the same transaction. We find no error here.

■ Appellant contends the trial court committed fundamental error in instructing the jury. He cites *Gamblin v. State* (1991), Ind.App., 568 N.E.2d 1040 for the proposition that once the State has chosen to specify in the charging information the precise manner in which the statute was violated, it is fundamental error to change the manner in the instructions to the jury. He also cites *Brooks v. State* (1988), Ind., 526 N.E.2d 1171 for the proposition that the trial court commits fundamental error if it amends a charge on its own motion or initiates additional charges. Appellant notes the charging informations for burglary and confinement were amended six days prior to trial, and that the

January 1, 1994, *see* Ind.Evid.Rule 404(b) "prep-

trial court read to the jury the statutory definitions and elements of robbery and criminal confinement as lesser-included offenses. Appellant concludes, apparently, that the jury must have been so confused by the multiplicity of choices and deviation from the offenses charged that he was denied due process and a fair trial.

■ As the State here aptly points out, however, it is no wonder the trial court approved the charging amendments and that defense counsel made no objection to the court's instructions. The amendments made only changes favorable to the defense, in fact narrowing the issues appellant was required to address by eliminating allegations of serious bodily injury. Similarly, the final instructions on lesser-included offenses obviously afforded appellant the potential for less severe convictions and sentences. Having made no objection at the time, he cannot now be heard to say he thereby was prejudiced by denying the jury all-or-nothing choices. *See Suggs v. State* (1981), Ind., 428 N.E.2d 226. An appellant must demonstrate prejudice to his substantial rights in order to secure reversal. *Sharp v. State* (1989), Ind., 534 N.E.2d 708, *cert. denied,* 494 U.S. 1031, 110 S.Ct. 1481, 108 L.Ed.2d 617. We see no reversible error here.

■ Appellant contends the trial court erred in subjecting him to double jeopardy by imposing multiple punishments for the same acts. He argues the victim's currency, shotgun, rifle and truck all were taken in the same incident. The taking of the currency was charged as an element of the robbery while the taking of the other items was charged separately as theft. He argues the theft actually was included in the robbery offense and a separate sentence violates his right to be free from double jeopardy. He cites Ind.Code § 35–38–1–6's prohibition against entry of judgment and sentencing on both an offense and an included offense, as well as cases standing for the proposition that one purpose of the double jeopardy clause is to prevent the State from splitting up one crime and prosecuting it in parts. *See Steffler v. State* (1952), 230 Ind. 557, 104

aration."

N.E.2d 729; *Sering v. State* (1986), Ind.App., 488 N.E.2d 369.

▌ Citing *Blockburger v. United States* (1932), 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306, the State responds the robbery and theft charges each involved a different element, the taking of the currency on one hand and the taking of the truck, shotgun and rifle on the other, so that the theft was not included in the robbery. Here, however, the State confuses elements with facts; the element is that of taking. All of the elements of theft are included in those of robbery, *i.e.*, one cannot commit robbery without also committing theft; theft therefore is an inherently included offense of robbery. *See Rogers v. State* (1979), 272 Ind. 65, 396 N.E.2d 348. Moreover, while the various takings here were split up into two separate charges, a double jeopardy analysis looks to the manner in which the offenses are charged only where the lesser offense is not inherently included in the greater. *See Derado v. State* (1993), Ind., 622 N.E.2d 181; *Sering, supra.*

▌ Here, the events perpetrated at the Hawkins home all were part and parcel of the same criminal transaction, and any of the takings at issue could have been used to support the robbery charge. Under the "single larceny rule," when several articles of property are taken from the same person at the same time, from the same place, there is but a single larceny for which there may be but one judgment and one sentence. *Raines v. State* (1987), Ind., 514 N.E.2d 298. This rationale extends to theft as an included offense; where both cash and an automobile were taken during an armed robbery, the State could not split up a single offense to make distinct parts the basis for multiple prosecutions. Judgments finding the defendant guilty of both theft and robbery cannot stand. *Holt v. State* (1978), 178 Ind.App. 631, 383 N.E.2d 467. The judgment and sentence for theft must be vacated. Ind. Code § 35–38–1–6.

▌ Appellant also argues the confinement charge, while not inherently included in the robbery charge, was a lesser-included offense due to the wording of the factual allegations in the informations. He cites

*Winfrey v. State* (1989), Ind., 547 N.E.2d 272, where we held the entire offense of battery formed an element of the offense of aggravated robbery as charged. He maintains the confinement charge here was similarly included in the robbery offense. As we pointed out in *Derado, supra* at 183, citing *Wethington v. State* (1990), Ind., 560 N.E.2d 496, where "the acts alleged by the State to substantiate a necessary element of the robbery charge, i.e., the force that was used to effectuate the taking, were 'precisely coextensive' with the acts alleged as constituting a violation of the criminal confinement statute, the double jeopardy clause precluded conviction on both charges. *Id.* at 508."

Resolution of this issue, then, depends upon comparison of the instant informations for confinement and robbery, respectively. Is to "knowingly confine Albert Hawkins without the consent of said person while said defendant was armed with a deadly weapon, to-wit: a ratchet tool wrapped in tape and a shotgun" precisely coextensive with "holding Albert Hawkins without his consent and tieing [sic] him up, said act being committed while the defendant was armed with a deadly weapon, to-wit: ratchet tool wrapped in tape and a shotgun"? We think it is. Due to the manner of charging the factual allegations in the robbery and confinement informations, the latter offense thus was included in the former and cannot stand; the confinement judgment and sentence must be vacated. Ind.Code § 35–38–1–6.

Appellant argues the court also erred in permitting separate convictions for both the aggravated robbery and the aggravated battery, citing *Wills v. State* (1992), Ind., 595 N.E.2d 242 for the proposition that to allow two separate convictions stemming from the same act violates the double jeopardy clause. Appellant seems to suggest he was prejudiced here by entry of judgment, but no sentence, upon the battery conviction. The transcript, however, shows no entry of judgment on the battery offense; the only reference made by the court is that because both convictions arose out of the same injuries, he was unable to render any sentence on the battery charge. While we certainly see no prejudice to appellant here, on remand the

trial court should be more explicit that the battery charge (as well as the confinement and theft convictions) merges into the robbery offense.

■ Appellant contends the trial court erred in imposing a manifestly unreasonable sentence. He first maintains that in light of his juvenile status and the fact the victim testified appellant never had a weapon nor caused him any injury, it was grossly disproportionate to mete out maximum consecutive terms totalling seventy-three (73) years when if charged as a juvenile, he would have faced incarceration only until his twenty-first birthday. He argues in addition that his case is controlled by *Birch v. State* (1991), Ind.App., 569 N.E.2d 709, holding that where the victim's serious bodily injury is the result of another crime, and not the robbery, the defendant may not be convicted of robbery as a Class A felony, concluding his conviction should be for only a Class C felony, thus reducing his sentencing exposure by forty-two years. These first two arguments are decided later in this opinion as separate allegations of error. He thirdly asserts that the trial court failed to properly consider the aggravating and mitigating factors, ignoring most of the latter and neglecting to specify why each circumstance listed as aggravating was so, as per *Sims v. State* (1992), Ind., 585 N.E.2d 271.

As appellant acknowledges, the scope of our review of sentences is set out in Ind.Appellate Rule 17(B): we will not revise a sentence authorized by statute except where it is manifestly unreasonable, *i.e.*, where no reasonable person could find it appropriate to the particular offense and offender. Here, the trial court found appellant's youth to be a mitigating circumstance, yet one whose weight was greatly exceeded by ten aggravating circumstances summarized to include the victim's advanced age of 78 years, appellant's prior juvenile history of burglary and theft and the fact he was on parole at the time of the instant crime, his need for penal rehabilitation to counter his propensity to commit crimes in the future, and the brutality of the attack upon a victim who was trying to render assistance.

Appellant's assertions that he lacked any adult criminal record, that he never injured the victim, that his mother deserted him shortly before the crime, that he had sought to live a drug-free life, and that the conditions leading to the crime are not likely to recur due to his co-perpetrator's death, understandably were accorded little weight by the trial court. Appellant clearly assisted Osborne in battering and confining the victim, and his juvenile criminal history culminating in the instant offense belies his claim that the absence of drugs, or Osborne, from his life would point toward rehabilitation. We do not find the sentence imposed to be so inappropriate as to be manifestly unreasonable.

Appellant contends the trial court erred in admitting his confession. The day following the crime, while appellant was hospitalized at Methodist Hospital, he was visited by Indiana State Police Detective Frank Turchi. Detective Turchi had obtained a *Baker* [*v. State* (1983), Ind., 449 N.E.2d 1085] warrant to obtain samples of appellant's hair, blood, photographs and fingerprints for comparison purposes, and while serving appellant sought to interview him as well. After an advisement of rights and consultation with his 85–year–old grandmother, Nellie Tingle, they both signed a standard waiver of rights form and appellant gave a 28–minute tape-recorded statement detailing events as set forth above.

Appellant maintains that the statement, which was both played for the jury and given to them in transcribed form, was inadmissible because the waiver of his right to remain silent was not given knowingly and voluntarily as per Indiana's juvenile waiver provisions, codified at Ind.Code § 31–6–7–3. That statute, at § 3(a), provides that a juvenile's rights, including the right to avoid self-incrimination, may be waived by the child only when joined by counsel or "by the child's custodial parent, guardian, custodian, or guardian ad litem" and only if done knowingly and voluntarily by both the child and the other person. As appellant notes, this Court has enforced strict compliance with the juvenile waiver statute. *Stidham v. State* (1993),

Ind., 608 N.E.2d 699; *Whipple v. State* (1988), Ind., 523 N.E.2d 1363.

■ Appellant argues the State failed to comply with the statute because his grandmother, Nellie Tingle, having never been appointed appellant's guardian, was not authorized to waive his rights. The State counters she falls within the statute's purview as a *de facto* guardian, as did the grandparent in *Whipple, supra.* More directly dispositive, however, is the recent case of *Sevion v. State* (1993), Ind.App., 620 N.E.2d 736, which notes that "custodian" as listed in the statute is defined by Ind.Code § 31–6–1–14 as "a person with whom a child resides." Thus in the case at bar, where appellant was living with his grandmother at the time of the crime, she clearly was eligible as his custodian to serve as the consenting adult.

■ Appellant also points out that Ind. Code § 31–6–7–3 requires:

"(d) In determining whether any waiver of rights during custodial interrogation was made knowingly and voluntarily, the juvenile court shall consider all the circumstances of the waiver, including:

\*　　\*　　\*　　\*　　\*　　\*

(2) whether the child or his parent, guardian, custodian, or attorney understood the consequences of his statements;

(3) whether the child and his parent, guardian or custodian had been informed of the delinquent act with which the child was charged or of which he was suspected...."

He argues the waivers in his case were not made knowingly and voluntarily because Detective Turchi never informed appellant or his grandmother of the possible offenses to be charged, that he could be charged as an adult, and that he thus could face a severe sentence. He also maintains that because they had been informed appellant had to comply with the *Baker* warrant ordering him to submit to the taking of fingerprints, photographs, blood and hair samples, the injured appellant and his 85–year–old grandmother were under the impression that they had to comply with all of the detective's requests.

Noting that Detective Turchi testified he was unaware of the juvenile waiver requirements of Ind.Code § 31–6–7–3 at the time of appellant's interrogation, appellant cites *State v. Benoit* (1985), 126 N.H. 6, 490 A.2d 295 holding a juvenile's waiver invalid and his confession inadmissible where an adult *Miranda* form was used and police failed to explain the juvenile's rights or the possibility of his being tried as an adult; *accord People v. Prude* (1975), Ill.App., 336 N.E.2d 348. Appellant also cites *Deckard v. State* (1981), Ind.App., 425 N.E.2d 256, holding that although the juvenile's mother was present when the juvenile signed the waiver, it was nevertheless invalid where nothing on the face of the waiver established that the mother knowingly and intelligently waived the juvenile's rights.

■ Citing no authority, the State argues that given the nature of the offenses involved and the imminence of appellant's eighteenth birthday, it "seems unlikely" they did not know that his acts could lead to adult charges. That, of course, is not the proper standard of proof in Indiana; rather, the State must show beyond a reasonable doubt that the waiver was made knowingly, intelligently and voluntarily. *Fortson v. State* (1979), 270 Ind. 289, 385 N.E.2d 429; *Garrett v. State* (1976), 265 Ind. 63, 351 N.E.2d 30. Moreover, such determination is made from the totality of the circumstances, *Whipple, supra, Smith v. State* (1991), Ind.App., 580 N.E.2d 298, considering only that evidence favorable to the State and any uncontested evidence. *Id.*

Here, as per the holding in *Deckard, supra,* Nellie Tingle's signature appears on the waiver form also signed by appellant. As in *Smith, supra,* where the juvenile defendant's mother failed to appreciate that her son was in jeopardy of prosecution even though he had not been identified, "an accused must be aware of the probable consequences of his act, but ... not every misapprehension concerning the extent and nature of the criminal liability to which a confession may expose the accused vitiates the voluntariness of the confession." *Id.* at 301, citing *Jackson v. State* (1978), 269 Ind. 256, 379 N.E.2d 975. Here, then, as in *Jackson* and *Smith,* while Nellie

Tingle and the officers testified that neither she nor appellant was informed of the potential charges or penalties, "[t]he trial court was well within its discretion to find this factor standing alone insufficient to render the confession involuntary." *Id.* at 301.

The trial court did not err in finding the confession voluntary and thus admissible.

Appellant contends the trial court erred in denying his motion to dismiss in determining it, rather than juvenile court, had proper jurisdiction. Appellant sets forth Ind.Code § 31–6–2–4, including subsection (e), which in relevant part states:

"[T]he court shall upon motion of the prosecutor and after full investigation and hearing, waive jurisdiction if it finds that:

(1) the child is charged with an act that, if committed by an adult, would be:

(A) a Class A or Class B felony, except [drug-related felonies covered under subsection (c) ];

\*　\*　\*　\*　\*　\*

(2) there is probable cause to believe that the child has committed the act; and

(3) the child was sixteen (16) years of age or older when the act charged was allegedly committed;

unless it would be in the best interest of the child and of the safety and welfare of the community for the child to remain within the juvenile justice system."

Appellant then reiterates the argument advanced in his unreasonable-sentence issue, decided above, that he acted merely as an accessory to the robbery and beating of the victim, and while acknowledging that Ind. Code § 35–41–2–4 provides that "[a] person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense," he argues the legislature never intended that accessories to the waiverable acts enumerated in Ind.Code § 31–6–2–4 would be waived into felony court. He thus reasons that because Ind. Code § 31–6–2–4 is worded "is charged with an act that, if committed by an adult ..." and never mentions accessory liability, the accessory statute is in conflict with it when used to circumvent it.

He concludes his novel argument by maintaining the State charged him, alone, as a principal in order to be able to shoehorn him within the parameters of Ind.Code § 31–6–2–1.1(d), which provides, in pertinent part:

"(d) The juvenile court does not have jurisdiction over an individual for an alleged violation of:

\*　\*　\*　\*　\*　\*

(4) IC 35–42–5–1 (robbery), if:

(A) it was committed while armed with a deadly weapon; or

(B) it results in bodily injury or serious bodily injury;

\*　\*　\*　\*　\*　\*

if the individual was sixteen (16) years of age or older at the time of the alleged violation."

Appellant argues, in essence, that because the bodily injury did not result from the robbery but occurred prior to it, and in any event was not inflicted by him, the State wrongfully charged him as a principal to colorably make use of the statute to waive him into adult felony court.

■ Nevertheless, while the taking of the victim's possessions occurred after he was beaten, the boys planned "to jump this guy and take his money and his truck and everything" prior to returning to Hawkins' home the second time to ask to use the telephone. The victim sustained his injuries, clearly, in the course of being "jumped," *i.e.,* robbed. Inescapably, then, the robbery resulted in his bodily injury, and appellant's charges fell within the ambit of Ind.Code § 31–6–2–1.1(d)(4).

■ Moreover, appellant's argument that accessory liability should not apply through Ind.Code § 31–6–2–4 is not well taken. While it is true the latter statute does not specify accessories, neither do the other criminal statutes to which Ind.Code § 35–41–2–4, the accessory statute, applies. Appellant's argument that waiver to the circuit court under § 31–6–2–4 requires a hearing is well taken; however, as § 31–6–2–1.1 applies here and does not require a hearing, no harm nor error has been shown.

The trial court did not err in denying appellant's motion to dismiss for lack of jurisdiction.

Appellant contends the evidence was insufficient to support his convictions. He first argues that because he was charged not with conspiracy but with having committed the crimes charged by himself, the State failed in its proof, showing that none of the injuries were inflicted by his hand. He also argues the serious bodily injury was not shown to result from the robbery, or even that the force exerted was used to accomplish any of the takings. This repetition of appellant's previous arguments clearly is to no avail. As discussed above, under the accessory statute, Ind.Code § 35–41–2–4, Osborne's actions, including striking the victim and holding him at shotgun-point, are attributed to appellant; and clearly, the serious bodily injury did result from the robbery of the victim, which was effected by the use of force to subdue and to confine Hawkins in one room while items were taken from all over the house and garage.

■ Appellant thirdly argues there was no evidence to support his conviction of criminal confinement as a Class B felony, *i.e.*, that it was committed while armed with a deadly weapon or resulted in serious bodily injury. Appellant emphasizes it was brought out at trial that the victim suffered no broken tibia as alleged in the original information for confinement; we note, however, that it was amended to delete the allegation of serious bodily injury, leaving the allegation of commission while armed with a deadly weapon. Appellant's denials to the contrary, the account in his confession of Osborne holding Hawkins in the bathroom at shotgun-point while appellant ransacked the house comprises sufficient evidence to support his conviction of confinement as a Class B felony; however, as noted above it merges with the robbery conviction.

He fourthly argues the evidence was insufficient to support the aggravation of any of his convictions by reason of serious bodily injury due to material variance between the allegations in the informations and the proof adduced at trial. Appellant contrasts the injury "that creates a substantial risk of death and causing serious disfigurement" alleged in the aggravated battery information with the serious bodily injury alleged in the other informations, and reasons that since the "same identical injuries" were involved, no serious bodily injury other than that alleged for the aggravated battery could be used to aggravate the other convictions. He maintains there was insufficient evidence of risk of death or permanent disfigurement and concludes none of the aggravated enhancements was supported by the evidence.

■ Appellant's reasoning is partially flawed, however. The battery aggravator parallel to those applied here to the other offenses is found at Ind.Code § 35–42–2–1(a), which makes battery "(3) a Class C felony if it results in serious bodily injury to any other person or if it is committed by means of a deadly weapon." Here, however, appellant was charged under the aggravated battery statute, Ind.Code § 35–42–2–1.5, which provides that one who "inflicts injury on a person that creates a substantial risk of death or causes serious permanent disfigurement or protracted loss or impairment of the function of a bodily member or organ commits aggravated battery, a Class B felony." The standard of proving the serious bodily injury for Class C felony battery is the same, then, as for the other crimes thus enhanced here, yet is less, naturally, than that required for Class B felony aggravated battery.

The State's expert witness, Dr. Guha, testified that Hawkins' injuries might have caused a possibility but not a substantial risk of death, that the observable facts and the treatment provided did not indicate the victim was at a substantial risk of death, and that his earlier statement opining a substantial risk of death was, at most, mere speculation on his part. In view of Dr. Guha's testimony and the lack of evidence of serious permanent disfigurement, we hold the evidence here is sufficient to prove serious bodily injury and support battery as a Class C felony and the other aggravated convictions as entered, but is not sufficient to support aggravated battery as a Class B felony. (The trial court merged the battery offense into the robbery conviction.)

Appellant contends the trial court erred in failing to arraign him on the amended confinement charge. He cites Ind.Code § 35–33–7–5 pertaining to the initial hearing requirements, including the right to retained or appointed counsel, other constitutional rights of a criminal defendant, and the time deadlines for entry of a formal plea. He reasons his motion to dismiss the amended confinement count for failure to arraign thereon made that failure reversible error.

A showing of harm prejudicial to the defendant's substantial rights is required to demonstrate reversible error. *Sharp, supra.* Here, appellant was informed of the required information at his arraignment on the original charges. Moreover, the amendment to the confinement charge, as mentioned above, merely deleted the "serious bodily injury" aggravator, leaving only the "while armed with a deadly weapon" aggravator to defend against; appellant thus had nothing new to prepare for. We see no prejudice here and no reversible error.

Appellant contends the trial court erred in admitting, over his objection, evidence of his confession absent a proper foundation. He cites five prerequisites for admission of a tape recording from *Lamar v. State* (1972), 258 Ind. 504, 282 N.E.2d 795: 1) that the tape is authentic and correct; 2) that the testimony was elicited freely and voluntarily; 3) that all required warnings, acknowledgments and waivers were knowingly and intelligently given; 4) that it contains no otherwise inadmissible matters; and 5) that the tape is of such clarity as to be intelligible and enlightening to the jury. Appellant's assertions that the confession was not given voluntarily and knowingly, and that it included inadmissible evidence of prior bad acts, have been resolved above. He makes no objection to the tape's clarity; therefore, his sole remaining ground is that the tape, and its transcript, were not shown to be authentic and correct.

Appellant cites *Bryan v. State* (1983), Ind., 450 N.E.2d 53 wherein this Court held that where accuracy is an issue, the person who prepared the transcript must testify to verify that the transcript is an accurate recital of the recorded conversation. He points out

that Detective Turchi even testified the transcript and tape were not identical, and maintains they were inadmissible without foundation testimony from the typist who prepared the transcript. The record reveals, however, that Det. Turchi, who took and taped the statement, testified the recording was authentic and that he had reviewed the transcript and found it to be accurate. He additionally testified that the transcript was not identical to the tape only where portions were inaudible, *e.g.,* nodded responses represented as "[Inaudible]."

Accuracy was not a real issue here. Nevertheless, as in *Bryan, supra,* the trial court instructed the jury, before passing the transcript and playing the tape, to disregard the former and focus on the latter in case of any discrepancies. Moreover, appellant points us to no specific inaccuracies, *id.,* nor to any prejudice flowing therefrom. *Sharp, supra.* Accordingly, we find no error in the manner of admission of appellant's statement.

This cause is remanded with instructions to vacate the judgments upon the battery, theft and confinement convictions and to vacate the sentences for the latter two offenses, having imposed none on the former. The conviction and sentence for robbery are affirmed.

SHEPARD, C.J., and DeBRULER, DICKSON and SULLIVAN, JJ., concur.