**Matt WILCHER, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee.**

**No. 49A02–0108–CR–564.**

Court of Appeals of Indiana.

July 17, 2002.

Arnold P. Baratz, Baratz & Conway, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Micheal Gene Worden, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Judge.

Appellant-defendant, Matt Wilcher, appeals his conviction for Aggravated Battery,[1] a Class B felony, presenting three issues for our review. Concluding that: (1) the trial court properly excluded certain photographs from being admitted into evidence; (2) the State met its burden of disproving Wilcher's self-defense claim; and (3) the evidence was sufficient to support the Aggravated Battery conviction, we affirm.

### FACTS

The facts most favorable to the jury's verdict reveal that in the early hours of November 14, 1999, Bill Frost, Wilcher's friend, and Jeremy Jamison were arguing after Jamison discovered Frost beating on the door of Jamison's apartment. Although there was conflicting evidence as to who took the first swing, Jamison and Frost began to fight. Both men were wrestling on the ground and punching each other about the head. While Frost was on top of Jamison, Denton Winters, Jamison's friend, attempted to break up the fight. At this point, Wilcher approached Winters and stabbed him under the left arm in the chest with a knife that had a four to six-inch blade. Wilcher again approached Winters with the knife, but Winters' girlfriend got between them

1. Ind.Code § 35–42–2–1.5.

and yelled at Wilcher until he turned away. Winters fell to the ground and had difficulty breathing. Winters was bleeding from the wound in his side and drifted in and out of consciousness.

When emergency medical personnel arrived, Winters was stabilized and immediately transported to the hospital. Winters underwent surgery, was connected to a lung machine and remained hospitalized for five days. Marion County Sheriff's deputies apprehended Wilcher later that morning and recovered the knife used to stab Winters from Wilcher's vehicle.

Following a jury trial that concluded on June 13, 2001, Wilcher was found guilty of Aggravated Battery as a class B felony. He now appeals.

### I.  Exclusion of Photographs

■ Wilcher first claims that the trial court improperly excluded certain photographs from being entered into evidence. Wilcher argues that three photos graphically depicting injuries he sustained in an unrelated fight that occurred five years earlier were relevant to the circumstances presented here and should have been admitted.

■ In resolving this issue, we note that the admissibility of evidence is within the sound discretion of the trial court and will be disturbed only upon a showing that the trial court abused that discretion. *Johnson v. State*, 710 N.E.2d 925, 927 (Ind. Ct.App.1999). Conflicting evidence will be considered in the light most favorable to the trial court's ruling. *Id.* Upon appeal, we will neither reweigh evidence nor judge witness credibility. *Id.*

In the instant case, after Wilcher made an offer to prove regarding the admissibility of the photographs, the trial court decided not to allow them into evidence. It determined that the prejudicial effect of the evidence substantially outweighed any probative value the photos had. Wilcher now claims that, by refusing to admit these photographs into evidence, the trial court prevented the jury from "fully and properly viewing his actions from his standpoint and evaluating his self defense claim." [2] Appellant's Br. at 17.

When the defendant claims self-defense, evidence of the victim's violent propensities is admissible if they were known to the defendant. *Leming v. State*, 487 N.E.2d 832, 834 (Ind.Ct.App.1986); *see also* Ind. Evidence Rule 404(a)(2); *Brooks v. State*, 683 N.E.2d 574, 576 (Ind.1997). The photographs Wilcher sought to admit, however, were unconnected to Winters, the victim, or Jamison, who was engaged in the fight with Wilcher's friend Frost. Thus, they do not support Wilcher's claim of self-defense. *See Leming*, 487 N.E.2d at 834 (determining the trial court did not err in excluding evidence of the defendant's prior beating because this prior beating was not connected with current victim). Moreover, Wilcher testified regarding the beating he had received in the past and how it allegedly affected him. As a result, the trial court did not abuse its discretion in excluding Wilcher's proffered photographs.

### II.  Self–Defense

■ Wilcher next contends that the State failed to disprove his claim of self-defense. We note, however, that other than asserting that the trial court erred in excluding the above-mentioned photographs, Wilcher does not separately argue

---

**2.** Although Wilcher refers to his claim as one of self-defense, he actually claims to have been trying to defend his friend Bill Frost.

how the evidence was insufficient to rebut his self-defense claim.

■ Even so, we note that Ind.Code § 35–41–3–2(a) provides that one is justified in using reasonable force against another to protect himself or a third person from what he reasonably believes to be the imminent use of unlawful force. A person is justified in using deadly force only if he reasonably believes that that force is necessary to prevent serious bodily injury to himself or a third person or the commission of a forcible felony. *Id.* For a claim of self-defense to prevail, the defendant must show that he (1) was in a place where he had a right to be; (2) did not provoke, instigate, or participate willingly in the violence; and (3) had a reasonable fear of death or great bodily harm. *Rodriguez v. State*, 714 N.E.2d 667, 670 (Ind.Ct.App. 1999), *trans. denied.*

■ Once the defendant asserts a claim of self-defense, the State bears the burden of disproving the existence of one of the elements of the claim. *Mariscal v. State*, 687 N.E.2d 378, 381 (Ind.Ct.App. 1997), *trans. denied.* The State may rebut a claim of self-defense by affirmatively showing that the defendant did not act to defend himself or another by relying on the evidence elicited in the case-in-chief. *Id.* The standard of review for a challenge to the sufficiency of evidence to rebut a claim of self-defense is the same as the standard for any sufficiency of the evidence challenge. *Rodriguez*, 714 N.E.2d at 670. A defendant's conviction will be upheld unless no reasonable person could

say that the State negated the self-defense claim beyond a reasonable doubt. *Lilly v. State*, 506 N.E.2d 23, 24 (Ind.1987); *Mariscal*, 687 N.E.2d at 381.

Here, the evidence favorable to the jury's verdict reveals that Wilcher stabbed Winters in the chest while Winters was simply attempting to break up a fight between Jamison and Frost. The jury was not required to credit Wilcher's testimony that he acted under the belief that he needed to protect Frost from Winters. *See Mariscal*, 687 N.E.2d at 381 (question of whether State disproved a self-defense claim is a question for the trier of fact). The evidence favoring the verdict was sufficient to rebut Wilcher's claim of self-defense.

### III. Sufficiency of Evidence

■ Finally, Wilcher contends that the evidence was insufficient to support his conviction for Aggravated Battery. He argues that the State failed to establish that the injury inflicted upon Winters created a substantial risk of death to Winters.[3]

■ Upon a challenge to the sufficiency of the evidence, this court will not reweigh evidence or determine the credibility of witnesses. *VanMatre v. State*, 714 N.E.2d 655, 657–58 (Ind.Ct.App.1999). Instead, we will look only to the evidence favorable to the judgment along with any reasonable inferences to be drawn therefrom. *Id.* at 657. If there is substantial evidence of probative value from which the jury could find guilt beyond a reasonable

---

**3.** Wilcher also claims, in one sentence, that a lack of evidence regarding whether Winters's heart was lacerated and whether this caused a substantial risk of death created a material variance. A variance is an essential difference between proof and pleading. *Allen v. State*, 720 N.E.2d 707, 713 (Ind.1999). Here, Wilcher does not argue that there was a *dif-* *ference* between the allegations contained in the information and the proof adduced at trial. Instead, his argument is that the proof was insufficient to support the allegations charged in the information. Thus, we address Wilcher's claim, as does he, as one of insufficient evidence.

doubt, we will affirm the conviction. *Id.* at 658.

Indiana Code section 35–42–2–1.5 states:

A person who knowingly or intentionally inflicts injury on a person that creates a substantial risk of death or causes:

(1) serious permanent disfigurement;

(2) protracted loss or impairment of the function of a bodily member or organ; or

(3) the loss of a fetus;

commits aggravated battery, a Class B felony.

The charging information against Wilcher stated, "Matt Wilcher, on or about November 14, 1999, did knowingly inflict injury, that is: laceration to the heart, on another person, namely: Denton Winters, that created a substantial risk of death to Denton Winters, by stabbing with a knife." Appellant's App. p. 21.

Relying upon *Valentine v. State,* 257 Ind. 197, 273 N.E.2d 543 (1971), the State urges that, from the evidence presented regarding the nature and location of Winters's injuries and the treatment provided to him, the jury could reasonably infer that Wilcher caused a substantial risk of death to Winters. In *Valentine,* the victim was shot in the left temple with a .38 caliber bullet and hospitalized for one week. On appeal, our Supreme Court held that, contrary to the defendant's claims, expert medical testimony was not required to establish "great bodily harm," which was a material element of the former crime of aggravated assault and battery as codified by Indiana Code section 35–13–3–1 (1971), with which the defendant was charged. 257 Ind. at 201, 273 N.E.2d at 545. The current Aggravated Battery statute, however, requires a showing of "substantial risk of death," not "great bodily harm." *See* I.C. § 35–42–2–1.5.

Notwithstanding this change in the statute, no expert medical testimony was required to prove this element of the offense. As discussed in the *FACTS,* the testimony at trial revealed that Winters was stabbed in the upper-left side of his chest at heart level. Tr. p. 57–60, 110. As a result, Winters began to bleed and had breathing difficulties. The knife had a blade of four to six inches in length, Winters drifted in and out of consciousness after the stabbing, he underwent surgery, remained hospitalized for five days and was connected to a lung machine. Tr. p. 26, 60–62.

In light of the evidence presented with regard to the nature and location of the injury, the jury could have reasonably inferred that Wilcher exposed Winters to a substantial risk of death. Common knowledge bears out the conclusion that an individual is confronted with a substantial risk of death following a stab wound to the chest in circumstances such as these presented here. *See Beanblossom v. State,* 530 N.E.2d 741, 742–43 (Ind.1988) (finding that the victim sustained an injury which created a substantial risk of death when he received a blow to the back of the head which was forceful enough to knock him down to his hands and knees and to cause him to remain in a semiconscious state for a short period of time). As a result, the evidence was sufficient to support Wilcher's conviction for Aggravated Battery as a class B felony.

### CONCLUSION

In light of our resolution of the issues set forth above, we conclude that the trial court did not abuse its discretion in excluding Wilcher's proffered photographs and the evidence was sufficient to rebut Wilcher's claims of self-defense. Finally, we conclude that the evidence is sufficient to

support Wilcher's conviction for Aggravated Battery.

Judgment affirmed.

DARDEN, J., concurs.

SULLIVAN, J., dissents with opinion.

SULLIVAN, Judge, dissenting.

I concur with respect to Parts I and II of the majority opinion. I respectfully dissent, however, with respect to Part III.

In *Tingle v. State*, 632 N.E.2d 345 (Ind. 1994), our Supreme Court addressed the issue of the proof required to establish the element of "substantial risk of death." In *Tingle*, the defendant and an accomplice went to the home of the seventy-two-year-old victim to use the telephone after the stolen car in which they were riding broke down. Eventually, Tingle's accomplice began to beat the victim with a taped-up socket handle. When the victim tried to resist, Tingle restrained the victim while the accomplice continued to beat him about the head. The victim was eventually tied up with a telephone cord. Tingle was convicted of Aggravated Battery and challenged the sufficiency of the evidence upon appeal.

In *Tingle*, the State's expert medical witness testified that the victim's injuries might have caused a possibility but not a substantial risk of death, that the observa-

ble facts and the treatment provided to the victim did not indicate that the victim was at a substantial risk of death, and that his earlier statement opining a substantial risk of death was, at most, mere speculation. The Court held that this evidence was insufficient to establish substantial risk of death.[4] *Id.* at 354.

In the present case, the State failed to offer any opinion, medical or otherwise, indicating that Winters' injuries created a substantial risk of death. Nor did the State introduce into evidence any of Winters' medical records. The testimonial evidence revealed that Winters was stabbed in the upper-left side of his chest and, as a result, began to bleed and have difficulty breathing. Winters also went into and out of consciousness after being stabbed. Winters underwent surgery and remained hospitalized for five days. Winters also testified that, at the hospital, he was connected to a "lung machine." Transcript at 60. From this, one could reasonably infer that Winters could have died as a result of the injury he sustained. However, given the holding in *Tingle*, I am compelled to conclude that the evidence failed to establish that the injuries inflicted upon him by Wilcher resulted in a "substantial" risk of death.[5] As noted by Wilcher, the evidence might have established that Winters suffered from serious permanent disfigure-

---

**4.** The *Tingle* court also noted that there was no evidence of serious permanent disfigurement, which was alleged in the charging information in that case. *Id.* at 354.

**5.** But see *Beanblossom v. State*, 530 N.E.2d 741, 742–43 (Ind.1988), wherein the victim received a blow to the back of the head which was forceful enough to knock him down to his hands and knees and to cause him to remain in a semiconscious state for a short period. The Court held that this evidence alone was sufficient to support a finding that the victim had sustained an injury which created a substantial risk of death within the purview of

Indiana Code § 35–41–1–25, defining serious bodily injury. However, the *Beanblossom* Court also noted additional injuries suffered by the victim:

"the bullet fired by appellant which struck [the victim]'s hearing aid and shattered causing laceration wounds to his head, his outer ear, and his inner ear was certainly sufficient to support the jury's finding that [the victim] had sustained an injury which created a substantial risk of death. There is ample evidence in this record to sustain a finding of serious bodily injury in the perpetration of a robbery." 530 N.E.2d at 743.

ment or protracted loss or impairment of the function of a bodily member or organ. Regardless, the State chose to allege that Wilcher injured Winters in a manner creating a substantial risk of death but failed to establish such beyond a reasonable doubt.[6] Wilcher's conviction for Aggravated Battery should therefore be vacated.[7]

Nevertheless, when a conviction is reversed because the evidence is insufficient, we may remand to enter a judgment of conviction upon a lesser-included offense if the evidence is sufficient to support the lesser offense. *See Cockrell v. State*, 743 N.E.2d 799, 808 (Ind.Ct.App.2001) (reversing conviction of dealing in cocaine as a Class A felony but remanding with instructions to enter a judgment of conviction upon the lesser offense of dealing in cocaine as a Class B felony); *Johnson v. State*, 594 N.E.2d 817, 820–21 (Ind.Ct.App.

1992) (reversing conviction of dealing in cocaine but remanding with instructions to enter judgment of conviction upon lesser included offense of possession of cocaine); *Isom v. State*, 589 N.E.2d 245, 248 (Ind.Ct. App.1992) (same), *trans. denied.*

An offense is factually included in the crime charged if the means used to commit the crime charged as alleged in the charging instrument include all of the elements of the alleged lesser included offense. *Wright v. State*, 658 N.E.2d 563, 567 (Ind. 1995). *See also Johnson*, 594 N.E.2d at 821.

Here, the charging information alleged that Wilcher "did knowingly inflict injury, that is: laceration to the heart, on another person, namely: Denton Winters, that created a substantial risk of death to Denton Winters, by stabbing with a knife." App.

---

6. The State had every opportunity to acquire and introduce evidence showing a substantial risk of death. It failed to do so.

   The deficiencies in the State's proof was even suggested by the trial court:

   "THE COURT: Who's THE NEXT [witness]?

   MS. WOLFE: Denton Winters.

   MR. BARATZ: The alleged victim in this matter. And what I'm moving to exclude is any testimony from him describing his injuries beyond what he would know of his own personal knowledge. In other words, I believe that when he describes the extent or the seriousness of his injury, he's going to be relating to the jury things that were told to him by someone else, perhaps a doctor or something like that, and I don't think he's the proper person. He certainly can describe his injury, describe his pain, those sorts of things but to go further and describe the internal actually the workings and the damage done, I don't believe that he's the proper witness to do that.

   THE COURT: What's the basis of your objection?

   MR. BARATZ: that he—what he would say would be based on hearsay and that there are other people who would have personal knowledge who are experts who would be able to describe it.

   THE COURT: Ms. Wolfe.

   MS. WOLFE: He can certainly tell what— the damage he suffered during his attack, that his heart was lacerated. That's part of what he knows, it's his body and he can tell the jury what his injuries [were].

   THE COURT: *Do you have certified medical records?*

   MS. WOLFE: *I do not.*

   THE COURT: Why not?

   MS. WOLFE: I—

   THE COURT: *Are you planning on calling a physician?*

   MS. WOLFE: *No.*" (Emphasis supplied.)

7. Because, in my view, there was insufficient evidence to prove, beyond a reasonable doubt, the element of substantial risk of death, it is not necessary to determine whether the evidence did, or was required to, establish, as alleged, a laceration of Winters' heart. It may be noted, however, that as Wilcher observes, there was no evidence as to what internal damage was caused by the knife, the depth of the wound, or whether the wound extended to or lacerated the heart. The State does not dispute this observation but merely contends the "laceration to the heart" language in charging information is merely surplusage. Appellee's Brief at 5.

at 21. A person who knowingly or intentionally touches another person in a rude, insolent, or angry manner by means of a deadly weapon[8] commits Battery as a Class C felony. Ind.Code § 35–42–2–1(a)(3) (Burns Code Ed. Supp.2001). Therefore, the manner in which the information in the present case alleged Aggravated Battery factually included the offense of Battery as a Class C felony.

The evidence established, and Wilcher does not deny, that he stabbed Winters in the chest with a knife as Winters attempted to break up a fight between Frost and Jamison. Thus, Wilcher touched Winters in a rude, insolent, or angry manner and did so by means of a deadly weapon, the knife. This is sufficient to prove Battery as a Class C felony. *See Tingle*, 632 N.E.2d at 354 (holding that, although the evidence of victim's injuries was insufficient to prove substantial risk of death element of aggravated battery, it did prove battery as a Class C felony). I would instruct the trial court to vacate the conviction for Aggravated Battery and to enter a judgment of conviction for Battery, as a Class C felony, and to resentence accordingly.

8. A "deadly weapon" includes a weapon which, in the manner it is used, could ordinarily be used, or is intended to be used, is readily capable of causing serious bodily injury. Ind.Code § 34–41–1–8 (Burns Code Ed. Supp.2001). "Serious bodily injury" is in turn defined as bodily injury which creates a substantial risk of death, or that causes: (1) serious permanent disfigurement; (2) unconsciousness; (3) extreme pain; (4) permanent or protracted loss or impairment of the function of a bodily member or organ; or (5) loss of a fetus. Ind.Code § 35–41–1–25 (Burns Code Ed. Repl.1998). Here, the evidence indicates that the knife was used in a manner readily capable of causing serious bodily injury as defined by statute.