# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**VICTORIA L. BAILEY**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**AARON J. SPOLARICH**
Deputy Attorney General
Indianapolis, Indiana

FILED
Jul 28 2014, 10:28 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| BOBBY ALEXANDER, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No.  49A04-1207-CR-351 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Lisa Borges, Judge
Cause No. 49G04-1103-FA-15328

**July 28, 2014**

**OPINION – FOR PUBLICATION**

**PYLE, Judge**

Bobby Alexander ("Alexander") appeals, following a jury trial, one of his two convictions for Class B felony aggravated battery.[1]

We reverse and remand.

## ISSUE

Whether sufficient evidence supports one of Alexander's aggravated battery convictions.

## FACTS

On March 4, 2011, Alexander used a semiautomatic rifle to shoot at a car containing four individuals. As a result of the shooting, Alexander injured two of the individuals, Ryan Little ("Little"), who was driving the car, and Robert Seger ("Seger"), who was in the front passenger seat. The State charged Alexander with two counts of Class A felony attempted murder and two counts of Class B felony aggravated battery. In relevant part for this appeal, the State charged Alexander with aggravated battery as follows:

> Count III
> Bobby Alexander, on or about March 4, 2011, did knowingly inflict injury, that is: a grazing gunshot wound to the back, on another person, namely: Ryan Little, that created a substantial risk of death to Ryan Little, by shooting with a gun numerous times at and towards the person of Ryan Little[.]

(App. 43).

---

[1] IND. CODE § 35-42-2-1.5 (2011). We note that, effective July 1, 2014, a new version of this aggravated battery statute was enacted and that Class B felony aggravated battery is now a Level 3 felony. Because Alexander committed his crimes in 2011, we will apply the statute in effect at that time.

On June 4, 2012, the trial court commenced a two-day jury trial. Alexander's defense at trial was that he shot at Little's vehicle in self-defense. Little was not a cooperative witness. Prior to Little's testimony and upon a request from the State, the trial court admonished Little about contempt. When on the stand, Little admitted that he did not want to testify, claimed that he did not remember the details of the events surrounding the crimes, and did not testify about his injury. The State provided minimal evidence regarding the injury sustained by Little, other than testimony from other witnesses that Little was grazed by a bullet on his back and a photograph of his graze wound. (State's Ex. 21). Additionally, the evidence does not indicate that Little received any medical attention for his injury.

During closing argument, the State focused its argument on the two attempted murder charges against Alexander. When the State did address the aggravated battery charges, it erroneously argued that Alexander's act of shooting at Little's car was sufficient to show that Alexander had created a substantial risk of death. Specifically, the prosecutor stated: "I think all of us can agree that we are aware that shooting in a car at that close of a distance at people has a high probability of creating a substantial risk of death or serious bodily injury. That's sort of a no-brainer, ladies and gentlemen." (Tr. 539-40).

During Alexander's closing argument, his counsel did not alleviate the misinformation regarding what needed to be shown to prove that Alexander had created a substantial risk of death. Specifically, his counsel stated that the jury "still ha[d] to ask the question as to whether or not [Alexander] intentionally or knowingly created a

3

substantial risk of bodily injury or death because of acting . . . the way he did in firing the weapon and causing an aggravated battery." (Tr. 548).

The trial court did, however, correctly instruct the jury that, to prove aggravated battery, the State needed to prove that Alexander knowingly inflicted an injury on Little and that the injury created a substantial risk of death. The jury found Alexander guilty of the two Class B felony aggravated battery charges and not guilty of the two Class A felony attempted murder charges.

On June 20, 2012, the trial court held a sentencing hearing. During the hearing, the State requested restitution in the amount of $96,674.53 for Seger and introduced copies of Seger's medical bills. Before pronouncing Alexander's sentence, the trial court made the following statement regarding Alexander's aggravated battery convictions:

> First of all, the State did say that you could -- that aggravated battery would be supported by just shooting at or near a person and I disagree with that and I have to make the record clear. Aggravated battery says: A person who knowingly or intentionally inflicts injury on a person that creates a substantial risk of death, or causes serious permanent disfigurement, protracted loss, or impairment of the function of a bodily member or organ, or the loss of a fetus commits aggravated battery, a class B felony. So just shooting at somebody isn't going to be enough and shooting near somebody's not going to be enough for that. The situation is just one that is very difficult to explain. I can't pretend to understand it or explain it in any way . . . There was a lot of damage to Mr. Seger. He was -- he was -- nearly did lose his life. It meets the elements of aggravated battery.

(Tr. 629-30). The trial court then imposed a six (6) year executed sentence for Alexander's Class B felony aggravated battery conviction relating to Little and imposed an eight (8) year sentence with six (6) years executed and two (2) years suspended to probation for Alexander's Class B felony aggravated battery conviction relating to Seger.

4

The trial court ordered the sentences to be served consecutively at the Department of Correction. As for restitution, Alexander's counsel asked the trial court if it could conduct a restitution hearing at a later date because counsel wanted to "follow up" on "discounts" for Seger's medical bills. (Tr. 579). The trial court granted Alexander's request. Alexander then filed a notice of appeal and commenced this appeal.

After Alexander filed his Appellant's Brief, the State filed a motion to dismiss the appeal, arguing that this Court did not have jurisdiction because the trial court had not resolved the issue of restitution prior to Alexander's filing of his notice of appeal. The State relied on this Court's recent opinion in *Haste v. State*, 967 N.E.2d 576 (Ind. Ct. App. 2012), in which this Court *sua sponte* dismissed the defendant's appeal where the trial court entered sentencing but took the issue of restitution under advisement. The *Haste* Court explained that because "the requirement that a defendant pay restitution is as much a part of a criminal sentence as any fine or other penalty" and because the trial court had not ruled on restitution, the order imposing sentence was not a final appealable order under Appellate Rule 2(H). *Haste*, 967 N.E.2d at 576 (citing *Wilson v. State*, 688 N.E.2d 1293 (Ind. Ct. App. 1997) (citing *Kotsopoulos v. State*, 654 N.E.2d 44 (Ind. Ct. App. 1995), *trans. denied*)). In response to the State's motion to dismiss, Alexander "concede[d] that *Haste* says what the State says it says" but argued that *Haste* was "wrongly decided." (Alexander's Objection at 3). On February 4, 2013, this Court's motions panel denied the State's motion to dismiss.

The State subsequently filed its Appellee's Brief. In its brief, the State did not address Alexander's sufficiency argument; instead, the State asked this Court to reverse

5

the motions panel's ruling. The State argued that, under *Haste*, Alexander's appeal should be dismissed because Alexander did not have a final judgment under Appellate Rule 2(H). Alexander then filed a motion for oral argument, asking this Court to address the issue of whether this appeal should be dismissed.

This Court did not hold an oral argument but issued an opinion addressing the State's dispositive argument that this appeal should be dismissed for lack of appellate jurisdiction. Given the specific circumstances and "procedural limbo" of Alexander's case and relying on *Haste* and existing caselaw explaining that an order of restitution is part of a criminal sentence, we dismissed Alexander's appeal and remanded to the trial court to enter a restitution order within thirty days so that Alexander could have a final judgment and thereafter proceed with his direct appeal. *See Alexander v. State*, 987 N.E.2d 182, 185-86 (Ind. Ct. App. 2013), *trans. granted*.

Upon Alexander's filing of a transfer petition, our Indiana Supreme Court granted transfer and, in a per curiam opinion, vacated this panel's opinion. *See Alexander v. State*, 4 N.E.3d 1169, 1170-71 (Ind. 2014). Our Supreme Court did not overrule the holding in *Haste*; instead, it distinguished Alexander's specific procedural circumstances from the "reported facts" in *Haste* and remanded Alexander's case to this Court for consideration of his argument raised in his Appellant's Brief.[2] We now address Alexander's challenge to one of his two aggravated battery convictions.

---

[2] The Indiana Supreme Court further held that "given the unusual procedural history of this case, a future order of restitution once jurisdiction returns to the trial court w[ould] not be precluded." *Alexander*, 4 N.E.3d at 1171.

DECISION

Alexander argues that the evidence was insufficient to support his aggravated

battery conviction relating to Little.

> When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences *supporting* the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the [jury's verdict]. Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt . . . The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007) (internal quotation marks, citations,

and footnote omitted) (emphasis in original).

Here, the State filed an Appellee's Brief but did not respond to Alexander's

challenge to his conviction. "An appellee's failure to respond to an issue raised in an

appellant's brief is, as to that issue, akin to failing to file a brief." *Cox v. State*, 780

N.E.2d 1150, 1162 (Ind. Ct. App. 2002). Thus, Alexander need only establish *prima*

*facie* error. *See id. Prima facie* error is error "at first sight, on first appearance, or on the

face of it." *Id.* The *prima facie* error standard relieves us of the burden of controverting

Alexander's arguments, but it does not relieve us of our obligation to properly decide the

law as applied to the facts of the case. *See id.*

Turning to Alexander's challenge to his aggravated battery conviction, we note

that INDIANA CODE § 35-42-2-1.5 (2011) provides that a person commits Class B felony

aggravated battery when he "knowingly or intentionally inflicts injury on a person that

7

creates a substantial risk of death or causes: (1) serious permanent disfigurement; (2) protracted loss or impairment of the function of a bodily member or organ; or (3) the loss of a fetus[.]" Thus, to convict Alexander of Class B felony aggravated battery, the State was required to prove beyond a reasonable doubt that Alexander knowingly inflicted an injury on Little that created a substantial risk of death to Little.

Alexander concedes that the State proved beyond a reasonable doubt that Alexander shot at Little's car and knowingly inflicted an injury on Little. Instead, Alexander's sole argument on appeal is that the evidence presented by the State was insufficient to prove that Little's injury created a substantial risk of death.

We will uphold Alexander's conviction if we can conclude that the jury could have reasonably inferred, based upon the evidence presented at trial, that the injury Alexander inflicted on Little created a substantial risk of death to Little. "[I]n reviewing a sufficiency claim concerning whether the injuries created a substantial risk of death, we look to the observable facts, including the nature and location of the injury, and the treatment provided." *Oeth v. State*, 775 N.E.2d 696, 702 (Ind. Ct. App. 2002) (citing *Tingle v. State*, 632 N.E.2d 345, 354 (Ind. 1994); *Wilcher v. State*, 771 N.E.2d 113, 117 (Ind. Ct. App. 2002), *trans. denied*), *reh'g denied*; *trans. denied*.

Here, the State presented limited evidence regarding the nature of Little's injury, other than testimony indicating that Little had sustained a graze wound to his back and a photograph of the graze wound. Furthermore, Little received no medical treatment for the wound. Indeed, the record before us reveals that the State appears to have been confused on this substantial risk of death element for the Class B felony aggravated

8

battery charge. In both the charging information and the State's closing argument, the State asserted that it needed to prove that Alexander's actions of shooting at Little's car created a substantial risk of death. However, the aggravated battery statute clearly provides that it is the injury inflicted upon the victim—not the defendant's actions—that that must create a substantial risk of death. Thus, the State was required to prove that the Little's injury created a substantial risk of death to Little. Here, however, the State's evidence was not sufficient to prove Little's injury created a substantial risk of death. *See e.g.*, *Tingle*, 632 N.E.2d at 354 (holding that the evidence of victim's injuries was insufficient to support an aggravated battery conviction because the evidence showed only a "possibility but not a substantial risk of death"). *See also Neville v. State*, 802 N.E.2d 516, 519 (Ind. Ct. App. 2004) (reversing a defendant's aggravated battery conviction because the State did not prove that the victim's injury caused a protracted loss or impairment of the function of a bodily member), *trans. denied. Cf. Beanblossom v. State*, 530 N.E.2d 741, 742–43 (Ind. 1988) (holding that the evidence that the victim received a blow to the back of the head that was strong enough to knock him down to his hands and knees and cause him to remain in a semiconscious state for a short period of time was sufficient to show that the victim's injury created a substantial risk of death, which was required to show a serious bodily injury); *Mateo v. State*, 981 N.E.2d 59, 72 (Ind. Ct. App. 2012) (holding that there was sufficient evidence of substantial risk of death where the State presented evidence that the victim had eight stab wounds and was hit on the head with a baseball bat and that his "medical condition was sufficiently grave so as to necessitate his transfer to a Fort Wayne hospital via helicopter"), *trans. denied*;

9

*Oeth*, 775 N.E.2d at 702 (holding that the jury could reasonably infer that the victim's injuries created a substantial risk of death where the victim was struck on the back of the head with a hatchet, lost consciousness, and had "profuse bleeding from her wounds which the emergency room doctor had trouble stopping"); *Wilcher*, 771 N.E.2d at 117 (affirming the defendant's Class B felony aggravated battery conviction where the victim was stabbed in the upper-left side of his chest at heart level, was unconscious and had problems breathing, and remained hospitalized for five days while connected to a lung machine). Because the State did not present sufficient evidence to prove that Little's injury created a substantial risk of death, we must reverse Alexander's conviction for Class B felony aggravated battery in Count III.

Nevertheless, when we reverse a conviction for insufficient evidence, we may remand to the trial court to enter a judgment of conviction upon a lesser-included offense if the evidence is sufficient to support the lesser offense. *Neville*, 802 N.E.2d at 519. An offense is factually included in the crime charged if the means used to commit the crime charged as alleged in the charging instrument include all of the elements of the alleged lesser included offense. *Id.* (citing *Wright v. State*, 658 N.E.2d 563, 567 (Ind. 1995)).

Here, the State's charging information alleged that Alexander "did knowingly inflict injury, that is: a grazing gunshot wound to the back, on another person, namely: Ryan Little, that created a substantial risk of death to Ryan Little, by shooting with a gun numerous times at and towards the person of Ryan Little[.]" (App. 43). A person who knowingly or intentionally touches another person in a rude, insolent, or angry manner by means of a deadly weapon commits battery as a Class C felony. IND. CODE § 35–42–2–

10

1(a)(3) (2011). Therefore, the manner in which the information in the present case alleged aggravated battery included the offense of battery as a Class C felony.

Here, the State established—and Alexander does not dispute—that he shot at Little's car and inflicted an injury, a gunshot wound, on Little. Thus, Alexander touched Little in a rude, insolent, or angry manner and did so by means of a deadly weapon. This is sufficient to prove battery as a Class C felony. *See Tingle*, 632 N.E.2d at 354 (holding that, although the evidence of victim's injuries was insufficient to prove substantial risk of death element of aggravated battery, it did prove battery as a Class C felony). Accordingly, we reverse Alexander's Class B felony aggravated battery conviction and remand to the trial court with instructions to enter judgment of conviction for battery as a Class C felony on Count III and to resentence accordingly. *See Neville*, 802 N.E.2d at 520.

Reversed and remanded.

VAIDIK, C.J., and KIRSCH, J., concur.