## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 28 2019, 11:03 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kevin Wild
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Henry A. Flores
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Mark Bogue,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

June 28, 2019

Court of Appeals Case No.
18A-CR-2648

Appeal from the Marion Superior Court

The Honorable Grant Hawkins, Judge

Trial Court Cause No.
49G05-1612-F5-49018

**Tavitas, Judge.**

# Case Summary

[1] Mark Bogue appeals his conviction for battery resulting in serious bodily injury, a Level 5 felony, and the trial court's order of restitution. We affirm.

# Issues

[2] Bogue raises three issues on appeal, which we consolidate and restate as follows:

> I.  Whether the State presented sufficient evidence to negate Bogue's claim of self-defense.
>
> II.  Whether sufficient evidence supports the trial court's restitution order.

# Facts

[3] Christopher Jackson and Amy Starkey are divorced and have a daughter, An.J. Jackson has custody of An.J. on weekends and periodically hosts Starkey's other daughter, Al.C., at his home in Marion County, Indiana. On the evening of December 18, 2016, Bogue drove Starkey, who was his girlfriend at the time, to pick up the girls from Jackson's home.

[4] Bogue and Jackson "don't have the best relationship, and anytime [Bogue]'s around, [Jackson] tr[ies] to stay away." Tr. Vol. II pp. 63, 65. Jackson has described Bogue as "twice [his] size." *Id*. at 109. Although Starkey typically entered Jackson's house during custody exchanges, on this occasion, "she backed off the porch" when Jackson handed her the girls' bags. *Id*. at 63.

Jackson remarked that Starkey was acting differently because Bogue was present.

[5] The girls left the house and climbed into Bogue's vehicle with Starkey. Jackson and Bogue exchanged angry words. Bogue exited his vehicle to put the girls' bags into the trunk and, according to Jackson, retrieved "a black pipe and started swinging it [ ] hollerin'[,]" "Mother******, you wanna come out here and talk s*** to me now?" *Id*. at 66.

[6] Jackson left his porch and approached Bogue; Jackson ordered Bogue to "get the f*** off [his] property" and threatened to call the police. *Id*. at 89. Bogue then struck Jackson on the head. Jackson heard a "popping sound" and "lights were out." *Id*. Jackson regained consciousness and crawled into his home, where his mother called 911. Jackson was transported to the hospital by ambulance.

[7] Officer Tiffany Rand, Officer Thomas Borgmann, and Detective Rodney Bradburn of the Indianapolis Metropolitan Police Department ("IMPD") investigated the incident. Officer Borgmann saw Jackson at the hospital. Jackson looked "pretty bad[;]. . . [t]here was a lot of blood[;] [h]e had a nice large cut to his head[,] and [h]e seemed to be in a lot of pain." *Id*. at 37. At the hospital, Jackson identified Bogue as his assailant and also picked Bogue's image from a photo array. Jackson suffered a black eye and a significant head laceration that required nearly thirty staples to close, two surgeries, and a three-

day period of hospitalization. The police never recovered a pipe or other blunt object from the scene.

[8] On December 28, 2016, the State charged Bogue with battery by means of a deadly weapon, a Level 5 felony, and battery resulting in serious bodily injury, a Level 5 felony. On January 23, 2017, Bogue filed a notice of his intent to assert self-defense. Bogue was tried by a jury on August 13 and 14, 2018. Before the trial commenced, the State moved to admit evidence under Indiana Evidence Rule 404(b) related to Bogue's past threats to hurt Jackson if Jackson left his porch during a custody exchange.

[9] Starkey, who was no longer Bogue's girlfriend at the time of trial, testified as follows: the men had a history of conflict, and Jackson "knew not to get off his [ ] porch" during the custody exchanges. *Id*. at 129. After Starkey and the girls got into Bogue's vehicle, Jackson and Bogue began to argue. Jackson then "charged after" Bogue, "[r]unning full speed toward" Bogue. *Id*. at 123. Jackson tried to hit Bogue with his fist, but "didn't make full contact[,]" and Bogue "hit him back." *Id*. at 125. Starkey covered the windows of the car with her coat to shield the girls who were "freakin' out." *Id*. Bogue punched Jackson "one more time," and that was "all [Starkey] saw"; she then heard "maybe three" grunts that sounded like a person sustaining physical blows. *Id*. at 126. Starkey did not see Bogue with a weapon.

[10] An.J. testified that she saw Jackson lying immobile on the ground as Bogue punched Jackson "once or twice." *Id*. at 138. Al.C. testified that: (1) Bogue

struck Jackson with his fist; (2) Jackson fell prone to the ground; and (3) Bogue struck Jackson five more times.

[11] During the defense's presentation, Bogue testified that Jackson shouted and charged at him; flipped a lit cigarette into his face; and struck his face with fist. Bogue testified that he saw a metal item protruding from Jackson's hand.[1] *Id.* at 237. Bogue testified that he struck Jackson back and stated:

> I hit him with my right hand, which that's why it's on his left [side of his] head. I hit him as he's coming at me full speed, and then he fell, but he got back up. * * * * * He got back up, as he came down, he came back up and . . . he grabbed me. As he grabbed me, I had to -- I had to defend myself. I was in fear of my life because I didn't . . . know what he had in his hand.

*Id.* at 240. Bogue also testified that he struck Jackson two additional times in self-defense and only hit Jackson with his fists. Bogue testified further, "Once I seen [sic] him not approach me or considered [sic] a threat, I proceeded to my car." Tr. Vol. III p. 12. Bogue denied that Jackson lost consciousness; he also testified that, to the extent that Starkey's, An.J.'s, and Al.C.'s testimony contradicted his testimony, their statements were "lie[s]." *Id.* at 13.

[12] The jury found Bogue not guilty of battery by means of a deadly weapon, a Level 5 felony, and guilty of battery resulting in serious bodily injury, a Level 5

---

[1] A burnt cigarette was recovered and photographed at the scene, and the metal item was later identified as a cigarette lighter.

felony. At his sentencing hearing on October 10, 2018, the State presented evidence that Jackson, who does not have health insurance, incurred approximately $23,000.00 in medical bills and $10,000 in lost wages.[2]

[13] Next, Bogue testified that: (1) he worked as a licensed commercial driver; (2) he was demoted following his conviction; and (3) he took a "major pay cut." *Id.* at 65. Then, the following colloquy ensued between the trial court and Bogue:

> THE COURT: I'm pretty much satisfied that nobody was in the right that evening. I can accept that Mr. Jackson started the fight, but the fight was over well before [Bogue] was done punishing Mr. Jackson. On that, the witnesses are all clear. [Jackson] was down, . . . the fight was over, but [Bogue] was still poundin' on him. * * * * * The fact that [ ] there wasn't a felony conviction helps [Bogue] a lot. * * * * * Tell me again, Mr. Bogue, about the job demotion . . . .
>
> [BOGUE]: Basically there's three different divisions in our company. * * * * * And I'm being demoted to freight, which is the bottom of the barrel.
>
> * * * * *
>
> THE COURT: So if you're lucky, you'll have the lowest position available in the company?

---

[2] Jackson testified that insurance benefits were available through his job but that he had failed to apply for them. *See* Tr. Vol. II p. 58 ("[TRIAL COURT]: So not to imply fault, but if you wanted insurance, you could have gotten it, it turns out? [JACKSON]: If -- yes, I believe so. That's correct.).

[BOGUE]: If I'm lucky.

THE COURT: And what is that compensation weekly?

[BOGUE]: I don't have any idea. It's something that I don't know that I'll be able to maintain as far as my financials. So I'll have to look for a different job. Like, if I make 20 an hour now and they bump me down to, like, 11 or 12 bucks an hour, I don't know that I would -- have to be -- I -- I don't think I could do that. I would have to go elsewhere for employment.

* * * **

THE COURT: How long have you been continually employed?

* * * * *

[BOGUE]: I've had a CDL since 2000, and I've had a job ever since then. [ ]

THE COURT: I've gathered a lot more information. Any further thoughts you have, [State]?

* * * * *

Based on his criminal history, based on the injuries suffered by [ ] Jackson, and based on [Jackson's] statement in court today, I'm gonna find that the aggravating/mitigating factors equal, impose the advisory sentence of three years. Based upon your income expectation, what's the least amount of restitution you can pay monthly?

* * * * *

THE COURT: If you're thinking you can pay something, that's the number I need to know, 'cause I will hold you to it. Do you wanna talk to your lawyer?

[BOGUE]: Please.

THE COURT: All right.

[BOGUE]: I believe a hundred a month.

THE COURT: And that's based on income of what?

[BOGUE]: Gonna have to find new employment. So I'm – I'm – my counsel tells me I need to pay at least somethin'. So I'm figuring a hundred --

[DEFENSE COUNSEL]: Your -- Your Honor, [ ]given the defendant's ability to earn an income and what he anticipates[ ] he may be . . . capable of making with the -- the conviction[, ] he feels comfortable that he could afford a hundred dollars a month given the demotion and still needing to try and find employment while covering the rest of his expenses.

THE COURT: That CDL's pretty valuable even with a criminal history. I don't know what his cost of living is 'cause that wasn't shared with me. I know he's living with someone else at her location. Okay. Of the three years, I'm gonna suspend two, probation, anger control, hundred and fifty dollar minimum monthly payment.

* * * * *

THE COURT: Hundred and fifty a month minimum towards the total of $16,363.15. Did you get that? That's half of the total loss. At the end of the sentence, the rest will be reduced to judgment. And you have to understand now, this is the kinda thing you can't take bankruptcy on. You understand, sir?

\* \* \* \* \*

[BOGUE]: Yes.

*Id*. at 73-76.[3]

[14] The trial court sentenced Bogue to three years, with one year executed on home detention and two years suspended to probation. The trial court's order of probation explicitly provides for restitution to Jackson of $16,363.15 at a rate of $30.00 each month during the executed portion of his sentence on home detention, and at a rate of $150.00 each month during Bogue's probation term. *Id*. The trial court further ordered that any unpaid balance would be reduced to a civil judgment upon Bogue's completion of his sentence. Bogue now appeals.

## Analysis

### I.    *Sufficiency of the Evidence*

[15] Bogue argues that the State failed to present sufficient evidence to rebut his self-defense claim. The standard of review for a challenge to the sufficiency of

---

[3] Bogue also reported that he was subject to child support garnishment orders for two children, including a child in college, and that he was current on child support.

evidence to rebut a claim of self-defense is the same as the standard for any sufficiency of the evidence claim. *Wilson v. State*, 770 N.E.2d 799, 801 (Ind. 2002). When analyzing a claim of insufficient evidence to support a conviction, we must consider only the probative evidence and reasonable inferences supporting the judgment. *Sallee v. State*, 51 N.E.3d 130, 133 (Ind. 2016). "It is the factfinder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction." *Id.* The evidence does not have to overcome every reasonable hypothesis of innocence, and it is sufficient if an inference may reasonably be drawn to support the conviction. *Id.*

[16] A valid claim of self-defense is legal justification for an otherwise criminal act. *Wallace v. State*, 725 N.E.2d 837, 840 (Ind. 2000). Indiana Code Section 35-41-3-2(c) provides:

> A person is justified in using reasonable force against any other person to protect the person or a third person from what the person reasonably believes to be the imminent use of unlawful force. However, a person:
>
> (1) is justified in using deadly force; and
>
> (2) does not have a duty to retreat;
>
> if the person reasonably believes that that force is necessary to prevent serious bodily injury to the person or a third person or the commission of a forcible felony. No person shall be placed in legal jeopardy of any kind whatsoever for protecting the person or a third person by reasonable means necessary.

[17] To prevail on a self-defense claim, the defendant must show that he: (1) was in a place where he had a right to be; (2) acted without fault; and (3) was in reasonable fear or apprehension of bodily harm. *Henson v. State*, 786 N.E.2d 274, 277 (Ind. 2003). "When a claim of self-defense is raised and finds support in the evidence, the State has the burden of negating at least one of the necessary elements." *Wilson*, 770 N.E.2d at 800. "The State may meet this burden by rebutting the defense directly, by affirmatively showing the defendant did not act in self-defense, or by simply relying upon the sufficiency of its evidence in chief." *Miller v. State*, 720 N.E.2d 696, 700 (Ind. 1999). "If a defendant is convicted despite his claim of self-defense, this Court will reverse only if no reasonable person could say that self-defense was negated by the State beyond a reasonable doubt." *Wilson*, 770 N.E.2d at 800-01.

[18] "The amount of force that an individual may use to protect himself must be proportionate to the urgency of the situation" facing the individual. *Pinkston v. State*, 821 N.E.2d 830, 842 (Ind. Ct. App. 2004), *trans. denied*. "When a person uses more force than is reasonably necessary under the circumstances, the right of self-defense is extinguished." *Id*. Such is the case here.

[19] Here, despite conflicting accounts regarding who threw the first punch in the physical altercation, the testimony of Jackson, An.J., and Al.C established that Bogue's first punch rendered Jackson immobile; yet, Bogue continued to strike Jackson after Jackson lay prone and no longer posed a threat. Bogue's conduct in this regard "extinguished" his right of self-defense. *See id*.

[20] Even assuming arguendo that Bogue believed, as he testified, [4] that the metal object in Jackson's hand may have been a knife or brass knuckles, any potential threat dissipated after Bogue's first punch rendered Jackson unconscious. Under these circumstances, Bogue cannot establish that he "reasonably believe[d]" that he was protecting himself from imminent use of unlawful force as he repeatedly struck an unconscious man. *See Wallace*, 725 N.E.2d at 840.

[21] Although Bogue testified that Jackson remained standing and continued to fight after Bogue's first punch, Starkey, Jackson, An.J. and Al.C testified otherwise. The jury weighed the witnesses' credibility and resolved the conflict by believing Starkey, Jackson, An.J. and Al.C. *See Alexander v. State*, 13 N.E.3d 917, 921 (Ind. Ct. App. 2014) (providing it is the jury's responsibility to judge witness credibility and to weigh and resolve conflicts in the evidence).

[22] Based on the foregoing, Bogue failed to prove two elements of his self-defense claim—that he "acted without fault"; and that he "was in reasonable fear or apprehension of bodily harm." *See Henson*, 786 N.E.2d at 277. Thus, we decline to find that "no reasonable person could say that self-defense was negated by the State beyond a reasonable doubt." *See Wilson*, 770 N.E.2d at 800-01. The State presented sufficient evidence to negate Bogue's claim of self-defense.

---

[4] *See* Tr. Vol. II p. 250.

## II.    *Restitution*

### *A. Ability to Pay*

Next, Bogue argues that, in imposing payment of restitution as a condition of his probation, the trial court failed to inquire into his ability to pay. By statute, restitution shall be based on damage "incurred as a result of the crime." Ind. Code § 35-50-5-3(a)(1). While this statute is to be strictly construed against the State, the trial court abuses its discretion in ordering restitution "only if no evidence or reasonable inferences therefrom support the trial court's decision." *Morgan v. State*, 49 N.E.3d 1091, 1094 (Ind. Ct. App. 2016); *Little v. State*, 839 N.E.2d 807, 809 (Ind. Ct. App. 2005).

> As a condition of probation, the court may require a person to . . . [m]ake restitution or reparation to the victim of the crime for damage or injury that was sustained by the victim. When restitution or reparation is a condition of probation, the court shall fix the amount, which may not exceed an amount the person can or will be able to pay, and shall fix the manner of performance.

I.C. § 35-38-2-2.3(a)(6).

Whether a trial court needs to inquire into a defendant's ability to pay depends on whether restitution is ordered as a condition of probation or is ordered as part of an executed sentence. Here, the trial court explicitly ordered Bogue to

make restitution both as part of Bogue's executed sentence and as a condition of probation.[5]

[26] When restitution is ordered as part of an executed sentence, no inquiry into defendant's ability to pay is required because restitution is merely a money judgment and a defendant may not be imprisoned for non-payment. *Archer v. State,* 81 N.E.3d 212, 217 (Ind. 2017). "An 'executed sentence' is one that is actually served in a correctional facility, or other alternative correctional program, such as work release or home detention as opposed to a suspended sentence or sentence of probation." *Barker v. State*, 994 N.E.2d 306, 313 (Ind. Ct. App. 2013) (quoting *Hildebrandt v. State*, 770 N.E.2d 355, 360 (Ind. Ct. App. 2002)). The trial court was, therefore, not obliged to inquire into Bogue's ability to pay regarding its order that Bogue should pay $30.00 each month, as a part of Bogue's executed sentence on home detention.

[27] On the other hand, when the trial court enters a restitution order as a condition of probation, the trial court *must* inquire into the defendant's ability to pay in order to prevent an indigent defendant from being imprisoned because of a probation violation based on a defendant's failure to pay restitution. *Archer,* 81 N.E.3d at 217.

---

[5] As noted above, the trial court's order of probation explicitly provides for restitution to Jackson of $16,363.15 at a rate of $30.00 each month during the executed portion of his sentence on home detention, and at a rate of $150.00 each month during Bogue's probation term. *Id*. The trial court further ordered that any unpaid balance would be reduced to a civil judgment upon Bogue's completion of his sentence.

[28]	Bogue argues that the trial court erred as follows: (1) "[it] fell short of fully assessing [his] actual ability to pay the amount of restitution ordered to be paid during his probation period"; (2) "[it] inquired into a small portion of Mr. Bogue's income, which at that point was largely unknown, knew . . . that [Bogue] had no assets, and did not inquire about most of his costs of living or liabilities"; and (3) it miscalculated his restitution obligation because it failed to "fully assess[ ] his actual ability to pay." Appellant's Br. pp. 19-20.

[29]	Our Supreme Court has previously delineated what constitutes sufficient inquiry into a defendant's ability to pay restitution as follows:

> . . ."[W]here neither the defendant nor the State has provided any information or testimony regarding the defendant's ability to pay,[6] the trial court must make the necessary inquiry to meet its statutory obligation." . . .[I]t was the defendant's burden to provide evidence of inability to pay and then the burden shifted to the State to rebut such evidence. [A] restitution order without any evidence that a defendant can or will be able to pay cannot stand.

*Archer*, 81 N.E.3d at 218 (quoting *Bell v. State*, 59 N.E.3d 959, 962 (Ind. 2016)) (citations omitted).

---

[6] The instant case is not one in which "neither the defendant nor the State" provided information or testimony regarding the defendant's ability to pay. *Archer*, 81 N.E.3d at 218.

[30]     Before it imposed Bogue's restitution obligation, the trial court engaged Bogue in a discussion that addressed: (1) the financial implications of Bogue's demotion; (2) Bogue's decreased pay; (3) the relative value of a commercial driving license, notwithstanding Bogue's conviction; and (4) Bogue's *own* estimate—as the person most familiar with his expenses—of what he could afford.  The trial court also ordered Bogue to make restitution of only *half the amount* of the losses claimed by Jackson.

[31]     Bogue was well-aware that his wage rate, if not job status, hinged on whether he was convicted.  It was incumbent upon Bogue to appear at sentencing with evidence of his inability to pay if he was demoted, including the reduced rate paid to freight drivers and the effect of the reduction in pay on his personal budget.  *See id*.  As the prosecutor noted, "I don't understand why he doesn't know what he would make [as a demoted freight driver] [be]cause I think he's already been demoted and is working that position."  Tr. Vol. III p. 76.  Bogue has not established that the trial court's inquiry into his ability to make restitution was inadequate.  Based on the foregoing evidence, we decline to find that the trial abused its discretion in ordering Bogue to pay $150 per week to defray half of Jackson's losses from Bogue's attack.

### *B. Calculation*

[32]     Bogue also argues that the trial court miscalculated his repayment obligation.  He argues that "repeated charges were included in the State's calculations of [ ] Jackson's total loss" and cites two such instances.  Appellant's Br. p. 21.  As the State correctly asserts, Bogue failed to object "to the admission of the State's

sentencing exhibits, which set forth the amount of the medical bills and lost wages or their accuracy." *See* Appellee's Br. p. 18. Bogue may not present this argument for the first time on appeal. *See Washington v. State*, 808 N.E.2d 617, 625 (Ind. 2004). Nor does Bogue assert that the trial court committed fundamental error. *See Tharpe v. State*, 955 N.E.2d 836, 839 (Ind. Ct. App. 2011) (holding an appellant can argue fundamental error to overcome waiver of an issue). This issue is waived.[7]

# Conclusion

[33] The State presented sufficient evidence to negate Bogue's claim of self-defense. The trial court properly inquired into Bogue's ability to pay restitution and did not abuse its discretion in imposing its restitution order. Bogue has waived his claim for recalculation of his restitution obligation. We affirm.

[34] Affirmed.

Crone, J., and Bradford, J., concur.

---

[7] Further, we find the State's argument below to be persuasive:

> . . . [O]ut of an approximately $32,000 in medical bill[s] and lost wages, [Bogue] claims a mere $2800 was [included] in [ ] error. However, at sentencing, the trial court only required [Bogue] to pay half of the total amount [of Jackson's losses,] $16,363,15. Therefore, even [i]f the total amount o[f] restitution was incorrect by $2800, the trial court's order requiring [Bogue] to pay $16,363.15 of a total of $29,849 (the reduced total based on the alleged $2800 error) was more than lenient given the battery [Bogue] inflicted upon Jackson in front of Jackson's daughter that left him with chronic injuries.

Appellee's Br. p. 19 (citations omitted).