



FILED
Mar 27 2024, 9:35 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Court of Appeals of Indiana

**W.H.,**

*Appellant-Defendant*

v.

**State of Indiana,**

*Appellee-Plaintiff*

---

March 27, 2024

Court of Appeals Case No.
23A-JV-2451

Appeal from the Marion Superior Court

The Honorable Danielle Gaughan, Judge
The Honorable Tara Y. Melton, Magistrate

Trial Court Cause No.
49D15-2307-JD-5553

---

**Opinion by Judge Pyle**

Judges Bailey and Crone concur.

**Pyle, Judge.**

## Statement of the Case

W.H. ("W.H.") appeals his juvenile adjudication for Level 3 felony aggravated battery if committed by an adult.[1] W.H. argues that there is insufficient evidence to support his juvenile adjudication for aggravated battery because the State failed to prove that the injury that W.H. had inflicted on the victim's lower leg created a substantial risk of death to the victim. Agreeing with W.H. and concluding that the State failed to present sufficient evidence to support W.H.'s juvenile adjudication for aggravated battery, we reverse the juvenile court's judgment.

We reverse.

## Issue

> Whether there was sufficient evidence to support W.H.'s juvenile adjudication for aggravated battery.

---

[1] IND. CODE § 35-42-2-1.5. Additionally, the juvenile court determined that W.H. had committed the following delinquent acts if committed by an adult: Level 5 felony battery by means of a deadly weapon; Level 5 felony battery resulting in serious bodily injury (which the juvenile court then merged into the other Level 5 felony adjudication during the disposition hearing); and Class A misdemeanor dangerous possession of a firearm. W.H. does not challenge the sufficiency of the evidence to support these other juvenile adjudications. Therefore, we will not discuss them any further.

## Facts

[3] On June 21, 2023, seventeen-year-old E.N. ("E.N.") was playing soccer with his brother and some friends at E.N.'s apartment complex in Marion County. Sixteen-year-old W.H. and some of his friends approached E.N. and the others who were playing soccer. W.H. "talk[ed] about fighting[,]" and E.N. told him that he did not want to fight. (Tr. Vol. 2 at 21). As E.N. and his brother ran away from the scene, W.H. pulled out a gun and fired multiple shots. One of the shots fired by W.H. struck E.N.'s lower right leg. E.N. continued running and ran to a neighbor's apartment, where someone called 911.

[4] Indianapolis Metropolitan Police Department ("IMPD") officers and EMS were dispatched to the scene. When one of the officers arrived, he saw E.N. "standing up against the wall to the apartment complex" while E.N. was putting "his weight [on] one foot[]" and holding his other foot in the air. (Tr. Vol. 2 at 69). The officer noticed that E.N. had "an obvious gunshot wound on his leg" that he had raised in the air. (Tr. Vol. 2 at 69). The police processed the scene and recovered six shell casings, which were the type that could have been fired by a "five five six caliber weapon" such as "an AR-15 style weapon or a rifle[.]" (Tr. Vol. 2 at 78, 79).

[5] EMS transported E.N. to the hospital. That same day, Detective Todd Lappin ("Detective Lappin") went to the hospital to talk to E.N. Detective Lappin saw E.N. "in the hospital bed with a gunshot wound to the right lower calf of his . . . right leg." (Tr. Vol. 2 at 85). Detective Lappin took three photographs of E.N. and his leg while he was at the hospital.

[6] "[S]everal days later, . . . once [E.N.] [had] already been treated for his wound[,]" Detective Lappin went to E.N.'s house and separately showed E.N. and his brother some photo arrays. E.N. and his brother both identified W.H. as the person who had shot E.N.'s leg.

[7] The State filed a petition alleging, in relevant part, that W.H. was a delinquent child for committing Level 3 felony aggravated battery if committed by an adult. Specifically, the State alleged that W.H. had "inflict[ed] [an] injury on [E.N.] that created a substantial risk of death." (App. Vol. 2 at 22).

[8] During the juvenile hearing, E.N. provided limited testimony regarding the nature of his wound and any treatment that he had received. E.N. merely answered in the affirmative when the State asked him if he had been "taken to the hospital" and had "receive[d] treatment at the hospital[.]" (Tr. Vol. 2 at 25). The State introduced photographs that depicted the wound on E.N.'s leg while he was on his hospital bed. The photographs reveal that E.N.'s injury was to the outside portion of his lower leg between his shin and his calf. The photographs also show that E.N. had a bandage on his leg. Apparently, the detective had removed the bandage to take photographs of the wound.

[9] When Detective Lappin testified, he explained that he had worked for IMPD for twenty-five years and had been an emergency paramedic before joining IMPD. Detective Lappin testified that he had observed "[h]undreds" of gunshot wounds during his career, and he confirmed that the injury to E.N.'s leg was consistent with a gunshot wound. (Tr. Vol. 2 at 85). Detective Lappin

also testified that E.N.'s leg had an entrance wound but no exit wound. When the State asked Detective Lappin to describe E.N.'s demeanor at the hospital, Detective Lappin responded that E.N. "was in pain obviously and . . . scared a little bit . . . not knowing what's going to happen as far as you know, the treatment with the leg, surgery, whether or not it was fractured." (Tr. Vol. 2 at 85). The State then asked Detective Lappin two questions about gunshot wounds in general, and Detective Lappin responded as follows:

> [The State]: In, in your training experience, um, have you seen the result of gunshot wounds to the leg? As in uh the outcome of, of a gunshot wound to the to to the leg?
>
> [Detective Lappin]: There could be numerous outcomes such as, you know, depending on the caliber or the type of bullet, the, the extent of the actual soft tissue injuries, whether or not bone was involved, whether or not there's a fracture involved[.]
>
> [The State]: So what kind of injuries or, uh, have you seen death result from a, a gunshot wound?
>
> [Detective Lappin]: I've seen, I mean, single gunshot wounds to multiple gunshot wounds. I've observed death from, from gunshot wounds, depending on [the] area of the body and, and what structures are hit.

(Tr. Vol. 2 at 85-86) (verbal ticks unchanged).

[10] During closing arguments, the State argued that it had proven the elements of aggravated battery based on E.N.'s testimony and Detective Lappin's testimony. The State pointed out that E.N.'s testimony showed that "he had been shot" and that Detective Lappin's testimony revealed that E.N.'s "wound was consistent with a gunshot wound[.]" (Tr. Vol. 2 at 97). The State also

inaccurately asserted that Detective Lappin had testified that "the injury uh created a substantial risk of death." (Tr. Vol. 2 at 97-98). The State then pointed to Detective Lappin's testimony that "he had seen people die from gunshot wounds including, uh, those to the extremities of the body, depending on where, uh, the bullet hits." (Tr. Vol. 2 at 98).

[11] During W.H.'s closing argument, his counsel argued that the State had failed to prove that E.N. had suffered an injury that had created a substantial risk of death. W.H.'s counsel pointed out that Detective Lappin had merely testified about "hypothetically what could happen" when "a person is injured by a gunshot wound on a limb" but that the State had not proven a substantial risk of death in relation to E.N.'s injury. (Tr. Vol. 2 at 100). W.H.'s counsel argued that "[a]ll we know is that [E.N.] suffered a wound to his . . . right calf[,] . . . that he was in the hospital[,] and [that he] . . . had treatment." (Tr. Vol. 2 at 100). W.H.'s counsel further argued that the State had failed to present any evidence—medical and non-medical—on the extent of the treatment, the extent of the wound, and "where exactly inside his body it . . . injured him." (Tr. Vol. 2 at 100). Additionally, W.H.'s counsel pointed out that "while medical testimony and expert testimony is not required to prove . . . that a person suffered a substantial risk of death, there has to be something more than simply testimony that he suffered an injury." (Tr. Vol. 2 at 100).

[12] The juvenile court entered a "true" finding on the aggravated battery allegation against W.H. (Tr. Vol. 2 at 105). The juvenile court did not discuss the evidence in relation to this juvenile adjudication. The juvenile court placed

W.H. on probation with a suspended commitment to the Indiana Department of Corrections, and it placed W.H. in Transitions Academy.

[13] W.H. now appeals his juvenile adjudication for aggravated battery.

## Decision

[14] W.H. argues that there is insufficient evidence to support his juvenile adjudication for aggravated battery. Specifically, W.H. contends that the State failed to prove that the injury to E.N.'s lower leg created a substantial risk of death to E.N. We agree.

[15] The aggravated battery statute, INDIANA CODE § 35-42-2-1.5, provides, in relevant part, that a person commits Level 3 felony aggravated battery when he "knowingly or intentionally inflicts injury on a person that creates a substantial risk of death[.]" Thus, to obtain a juvenile adjudication for what would be Level 3 felony aggravated battery if committed by an adult, the State was required to prove beyond a reasonable doubt that W.H. knowingly or intentionally inflicted an injury on E.N. that created a substantial risk of death to E.N.

[16] W.H. does not challenge the evidence that W.H. shot E.N. and inflicted an injury to E.N.'s lower leg. W.H.'s sole argument on appeal is that the evidence presented by the State was insufficient to prove that E.N.'s injury created a substantial risk of death to E.N. W.H. contends that the State's reliance on "general testimony from a detective about the potential consequences of gunshot wounds" was insufficient to prove the required element of a substantial

risk of death resulting from the injury. (W.H.'s Br. 8). W.H. relies on this Court's opinion in *Alexander v. State*, 13 N.E.3d 917 (Ind. Ct. App. 2014), in which we reversed the defendant's conviction because the State had failed to present sufficient evidence to show that the victim's gunshot injury had created a substantial risk of death to the victim.

[17] We will uphold W.H.'s juvenile adjudication if we can conclude that the juvenile court could have reasonably inferred, based upon the evidence presented during the disposition hearing, that the injury W.H. inflicted on E.N. created a substantial risk of death to E.N. *See Alexander,* 13 N.E.3d at 921. "[I]n reviewing a sufficiency claim concerning whether the injuries created a substantial risk of death, we look to the observable facts, including the nature and location of the injury, and the treatment provided." *Id.* (internal quotation marks and citations omitted).

[18] Here, the State presented limited evidence regarding the nature of E.N.'s injury and the treatment provided. E.N. testified that W.H. had shot at and hit E.N.'s leg while E.N. was running and that, thereafter, E.N. had continued to run to a neighbor's apartment. The State also presented testimony that when the police arrived on the scene, E.N. was standing on one foot and was thereafter taken by ambulance to the hospital for his injury. Additionally, the State presented testimony that E.N.'s injury consisted of a gunshot entrance wound to his lower leg, and the State presented photographs of the wound. However, the State did not present any testimony or medical records explaining the specific nature of the injury or the treatment thereof. Instead, to support the allegation that

E.N.'s injury created a substantial risk of death to E.N., the State relied upon general or hypothetical questions posed to Detective Lappin about his prior experience with gunshot wounds. The State did not present any evidence— specific to E.N.—to show that E.N.'s injury created a substantial risk of death. Because the State did not present sufficient evidence to prove that E.N.'s injury created a substantial risk of death to E.N., we reverse W.H.'s juvenile adjudication for Level 3 felony aggravated battery. *See e.g.*, *Alexander,* 13 N.E.3d at 922 (holding that the State had failed to present sufficient evidence to prove that the victim's gunshot injury had created a substantial risk of death where the State's evidence merely showed that the victim had sustained a graze wound to his back and had received no medical treatment); *Tingle v. State*, 632 N.E.2d 345, 354 (Ind. 1994) (holding that the evidence of victim's injuries was insufficient to support an aggravated battery conviction because the evidence showed only a "possibility but not a substantial risk of death").

[19] We note that the State points to information outside the record on appeal in an attempt to show that E.N.'s injury *could* have created a substantial risk of death to him. Specifically, the State cites to medical websites and journals to argue that the "lower limb contains many arteries and veins" that could have placed E.N. "at a high risk for life-threatening blood loss." (State's Br. 11). The State also argues that E.N.'s "injury placed [him] at risk for potential infection that could have led to sepsis and ultimately death." (State's Br. 11). We agree with W.H. that "[a]n appeal is the wrong time and wrong venue to fill the[] evidentiary gaps" that the State failed to prove to the juvenile court. (W.H.'s

Reply Br. 5).  *See Dolkey v. State*, 750 N.E.2d 460, 462 (Ind. Ct. App. 2001) (rejecting the State's "belated attempt to close th[e] evidentiary barn door" and explaining that it "is axiomatic that appellate review of the factfinder's assessment is limited to those matters contained in the record which were presented to and considered by the factfinder").  Thus, we reject the State's attempt to fill the evidentiary gaps left open by the prosecutor's office when it failed to present sufficient evidence below to prove that E.N.'s injury created a substantial risk of death to E.N.

[20]     Reversed.[2]


Bailey, J., and Crone, J. concur.


ATTORNEY FOR APPELLANT

Joel M. Schumm
Indianapolis, Indiana


ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Jennifer Anwarzai
Deputy Attorney General
Indianapolis, Indiana

---

[2] Additionally, we note that "when we reverse a conviction for insufficient evidence, we may remand to the trial court to enter a judgment of conviction upon a lesser-included offense if the evidence is sufficient to support the lesser offense."  *Alexander,* 13 N.E.3d at 922.  Here, however, W.H. already has a juvenile adjudication for Level 5 felony battery by means of a deadly weapon, which is a lesser-included offense to the Level 3 felony aggravated battery.